BUTTERMORE v. FALERIS.

1. AUTOMOBILES—INTERSECTIONS—STATUTES.
   In statute regulating operation of vehicles, definitions that a highway was "every way or place of whatever nature open to the use of the public, as a matter of right, for the purposes of vehicular travel," and that an intersection was the area embraced within the prolongation of the lateral curb or boundary lines were applicable to operation of motor vehicles at intersection of a highway with drive leading into a public park (1 Comp. Laws 1929, § 4693 [n, p]).

2. SAME—INTERSECTIONS—OVERTAKING VEHICLES—INSTRUCTIONS.
   Since the area embraced within prolongation of boundary lines of public highway and driveway into public park leading off

one side of the highway constitutes an intersection within the meaning of statute regulating operation of motor vehicles and making it unlawful for one motor vehicle to overtake and pass another within such area and collision occurred between plaintiff, overtaking motorcyclist, and defendant, overtaken motorist, as latter was about to turn from highway into drive, the trial court should have instructed jury as a matter of law that such area was an intersection (1 Comp. Laws 1929, §§ 4693 [n, p], 4707).

3. SAME—INTERSECTIONS—OVERTAKING  VEHICLES—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE.

In action by motorcyclist against motorist for damages sustained in a nighttime collision at intersection of highway with drive leading into public park on left side of highway, where evidence presented a question of fact for jury as to whether motorcyclist was in the act of passing or overtaking motorist as latter turned left, it was reversible error for court to charge there was no highway intersection and that plaintiff was not guilty of contributory negligence because he did not attempt to overtake and pass defendant in view of pertinent statutes defining intersections and making it unlawful for one motor vehicle to overtake and pass another in such area (1 Comp. Laws 1929, §§ 4693 [n, p], 4707).

4. APPEAL AND ERROR—CREDIBILITY OF WITNESSES FOR JURY.

The credibility of a witness is the sole province of a jury and it has the right to disbelieve the testimony of a witness.

5. SAME—CREDIBILITY.

Since the credibility of witnesses is the sole province of a jury, where testimony, though not directly contradicted, is contrary to circumstances in evidence, or if it contains inherent improbabilities or contradictions which alone or in connection with other circumstances in evidence may excite suspicion as to the truth of the testimony, it may be disregarded by the jury.

Appeal from Wayne; Toms (Robert), J.  Submitted October 20, 1942.  (Docket No. 31, Calendar No. 42,124.)  Decided February 23, 1943.

Separate cases by Francis Buttermore, a minor, and by Dale Buttermore, his next friend, against William and Thomas Faleris for injuries received by Francis Buttermore in a collision with automo-

bile owned by Thomas Faleris and driven by William Faleris. Cases consolidated for trial. Verdicts and judgments for plaintiffs. Defendants appeal. Reversed and new trial granted.

*Stewart A. Ricard,* for defendants.

SHARPE, J. Francis Buttermore, by his next friend, and Dale Buttermore, father of Francis, brought separate actions against William and Thomas Faleris for damages sustained by Francis Buttermore in a collision between a motorcycle and an automobile at or near the intersection of the Northville-Plymouth road and Willow drive, a driveway into Cass Benton park. The cases were tried simultaneously; and from separate judgments for plaintiffs, defendants appeal.

Northville-Plymouth road, a regular two-lane cement highway, runs north and south and passes Cass Benton park, which is a public park in Wayne county on the west side of the highway.

On May 6, 1939, at about 8:30 in the evening, Francis Buttermore was proceeding in a northerly direction on the Northville-Plymouth road on a motorcycle. At the same time, William Faleris, driving a Chevrolet car, was proceeding in the same direction on the same highway. The Chevrolet car was owned by Thomas Faleris, but was being driven with his knowledge and consent.

Defendant William Faleris testified that he was traveling north on the Northville-Plymouth road at a speed of approximately 25 miles per hour; that as he approached the entrance to the park, he reduced his speed and proceeded to make a left-hand turn into the driveway; that at this time he had re-

duced his speed to 8 or 10 miles per hour, held out his hand to signal that he was going to make a left-hand turn and by the application of the brakes caused his rear lights to "blink" off and on.

Plaintiff Francis Buttermore, the driver of the motorcycle, testified that he was proceeding in a northerly direction on the right or east side of the center line of the above highway; that his rate of speed was approximately 35 miles per hour; that when he was about 100 feet from Willow drive, he saw defendant's car turn sharply to the left and proceed to enter the driveway; that as defendant turned to the left into the driveway, he (plaintiff) also turned to the left; that he had two brakes on his motorcycle, but only had time to "pull" his front brake on; and that he was unable to avoid the collision.

The causes came on for trial and at the close of all proof were submitted to a jury. The jury, after deliberating some time, returned to the courtroom for further instructions concerning what constitutes a highway and intersection.

The trial judge then gave the following instruction:

"*The Court:* Well, I think I can settle that for you. I charged you yesterday as to the statute in this State which reads:

" '4707 (c): The driver of a vehicle shall not overtake and pass any other vehicle proceeding in the same direction * * * at any intersection of highways, unless permitted to do so by a traffic officer or police officer.' *

"I tried to emphasize the words 'or pass' yesterday, thinking that perhaps you would recognize the meaning of those words and bear in mind the testimony. Apparently you didn't. So, therefore, I

---

* 1 Comp. Laws 1929, § 4707 (Stat. Ann. § 9.1575).—REPORTER.

charge you that there is no evidence in this case that the motorcycle did overtake and pass the automobile. Not only that, I was a little doubtful yesterday, and I am not today, as to whether or not this was an intersection of a highway. I think the path leading into the park where the automobile turned cannot, in law, be considered as a highway. Therefore, on two grounds: First, that it was not an intersection of highways, and second, that the motorcycle did not overtake and pass the automobile; that on that ground the driver of the motorcycle is not guilty of contributory negligence. So, if you are debating as to whether or not the plaintiff, the driver of the motorcycle, was guilty of contributory negligence in violating that particular rule, I charge you that he was not."

The jury returned a verdict in favor of Francis Buttermore in the sum of $1,800 and a verdict in favor of Dale Buttermore in the sum of $473.90.

Following the verdicts and judgments, defendants made a motion for a new trial based upon the following:

"1. That the court erred in instructing and advising the jury that the place of the accident could not be designated as an intersecting highway.

"2. That the court erred in advising the jury the plaintiff was not attempting to pass the defendant at the point of impact."

The trial judge denied the motion for a new trial and said:

"The motion for a new trial will be denied upon the following ground: The statute, 1 Comp. Laws 1929, § 4704 (c), makes it illegal for one vehicle to overtake and pass another within an intersection or at an intersection, among other places. The testimony in this case shows that the plaintiff's vehicle did not overtake and pass the automobile driven

by the defendants and therefore did not violate this statute, and therefore was not guilty of contributory negligence.

"The instruction of the court to the jury that this was not a highway was erroneous, but it was a harmless error, in view of the fact that had the instruction been otherwise, there was no proof of violation by the plaintiff of the statute here involved prohibiting the overtaking and passing of one car by another at an intersection."

Defendants appeal and contend that the supplemental instruction given to the jury was contrary to the established facts; and that it was error to instruct the jury that plaintiff was not guilty of contributory negligence.

Under the above instruction the only issues for the consideration of the jury were the negligence of the driver of the automobile and the possible assessment of damages.

If there was no highway intersection involved or if there was no proof that plaintiff violated the statute of overtaking and passing at an intersection, then there was no error in the supplemental instruction given to the jury.

In our opinion the trial court was in error in instructing the jury: "I think the path leading into the park where the automobile turned cannot, in law, be considered as a highway." The physical facts as to whether the Northville-Plymouth road and Willow drive, the driveway entrance to Cass Benton park, constitute an intersection of highways are not in dispute. The statutory definitions contained in the uniform motor vehicle act seem to clearly cover this question.

" 'Highway.' Every way or place of whatever nature open to the use of the public, as a matter of right, for purposes of vehicular travel. The term

'highway' shall not be deemed to include a roadway or driveway upon grounds owned by private persons, colleges, universities or other institutions." 1 Comp. Laws 1929, § 4693 (n) (Stat. Ann. § 9.1561 [n]).

" 'Intersection.' The area embraced within the prolongation of the lateral curb lines or, if none, then the lateral boundary lines of two or more highways which join one another at an angle, whether or not one such highway crosses the other." 1 Comp. Laws 1929, § 4693 (p) (Stat. Ann. § 9.1561 [p]).

In accord with the above statutory provisions, the trial court should have charged the jury as a matter of law that Northville-Plymouth road and Willow drive constitute an intersection of highways.

Upon the question of whether or not a jury could find that plaintiff was in the act of passing or overtaking a car at an intersection, the record shows that plaintiff Francis Buttermore and Lawrence Ranson each on separate motorcycles were proceeding in a northerly direction on the Northville-Plymouth road at 35 miles per hour; that up to the time they reached the Six Mile road, they traveled "side by side;" that Lawrence Ranson fell back and Francis Buttermore rode in advance of his companion until a distance of about a quarter of a mile separated them; that at this time defendant was proceeding in the same direction at a speed of 25 to 30 miles per hour; that plaintiff kept on the right side of the highway until he saw defendant turn into Willow drive; that at this time plaintiff was approximately 100 feet to the rear of the automobile; that as defendant turned to the left, plaintiff also turned to the left and reduced his speed about five miles per hour while proceeding to the point where the motorcycle and the automobile col-

lided; and that the collision occurred at the intersection of the driveway and the paved road.

Lawrence Ranson testified as follows:

"*A.*   Well, we were riding side by side, as I said before, up to about Six Mile road, and I dropped back, I would say, probably 10, 15 feet behind Francis on his motorcycle.  I was riding—like this would be our half, I was riding over on this side, Francis was riding slightly ahead of me toward the middle. As we approached this car Francis blew his horn and was going to pass, I would say he was going to pass as he got right along by the driveway into the parkway, and had we both—the automobile and the motorcycle—traveled at the same speed, Francis would have passed the car right in the neighborhood of that bridge which I would say is approximately 50 or 100 feet past this little drive, and as he got right up close—he was a very short distance behind the car, and apparently the gentlemen didn't know—   *   *   *

"I was just far enough behind on the right-hand side of our half of the road, so I went around the rear of the car.  It wasn't feet, I would say it was down in inches.  I couldn't say the Chevrolet slowed up, he didn't make any signal.   *   *   *

"*Q.*   Your speed was such that you weren't able to stop until you had passed more than 100 feet from where the accident happened, isn't that true?

"*A.*   On this gravel at the side, and considering the bridge being there, yes."

Defendant William Faleris testified as follows:

"When that motorcycle contacted my automobile, he pushed in my left rear fender.  He knocked my car so far it tilted over on the two wheels; I thought for a minute I was going to tip over, roll over.  It tilted on two wheels.  The motorcycle, it was junk after I saw it.  Well, he started from the left rear

fender, he pushed that in, knocked off the hubcap. When it first came in contact with my left rear fender —he pushed it right in, also he knocked off the left rear hubcap of the wheel. He continued and took off the whole running board on the left side. He pushed in the rear door and cut off the left fender— it was just cut off. There was three brackets holding—I mean from the car under the Chevrolet; under the left running board the aerial is for your radio—that is there. He put that completely off; he pushed in my left front door and he pushed the body in about three or four inches that later I was unable to open,—raise my window.  *  *  *  He knocked my frame in at least an inch. I saw that after the accident, and after he knocked the radiator off from the hosing connections and also the left front hubcap.''

In this case there is a dispute as to the distance plaintiff Francis Buttermore was behind the automobile when the left turn was made. There is also a dispute as to the rate of speed that plaintiff was traveling just before and at the moment of the impact. These questions of fact, if resolved against the claim made by Francis Buttermore, together with the admitted fact that Francis Buttermore turned to the left at approximately the same time that the automobile turned would have some bearing upon the question of whether or not plaintiff Francis Buttermore was in the act of passing or overtaking a car at an intersection. This question of fact should have been submitted to a jury.

The credibility of a witness is the sole province of a jury. A jury had the right to disbelieve the testimony of Francis Buttermore. See *Woodin* v. *Durfee,* 46 Mich. 424.

In *Cuttle* v. *Concordia Mutual Fire Ins. Co.,* 295 Mich. 514, 519, we said:

''If testimony, though not directly contradicted, is contrary to circumstances in evidence, or if it con-

tains inherent improbabilities or contradictions which alone or in connection with other circumstances in evidence may excite suspicion as to the truth of the testimony, it may be disregarded by the jury.

For the errors pointed out, the judgments are set aside and a new trial granted. Defendants may recover costs.

BOYLES, C. J., and CHANDLER, NORTH, STARR, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.