# DAVID P. DEHEN v. OSCAR A. BERNING.[1]

December 24, 1936.

No. 30,932.

[1]Reported in 270 N. W. 602.

*Tautges, Eichelzer & Tautges* and *S. A. Johnson,* for appellant.

*William H. Freeman* and *Thomas P. Welch,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff, a guest passenger in defendant's car, suffered injuries as a result of an automobile collision. In his action to recover damages therefor he met with an adverse verdict, and he appeals from the judgment entered pursuant thereto.

The evidence would justify a jury in finding the following facts: State trunk highway No. 169 (formerly No. 18) in the vicinity of the accident is paved 20 feet in width with 10-foot shoulders flush with the pavement, graveled, firm, and suitable for driving in case of need. At a point about 400 feet south of a crossroad near Zimmerman there were three automobiles which became involved in this accident. Plaintiff and defendant, including two other men, were traveling northerly in the latter's car, he being at the wheel, on a fishing trip. Peck was driving southerly. Each was approaching the other in his own proper traffic lane at a rate of about 45 to 50 miles an hour. Weather conditions were clear, the road open and dry, and visibility perfect. Immediately behind the Peck car, a distance of 25 to 50 feet and going in the same direction, was one driven by Mr. Ingram. This car bore a Michigan license number. We shall refer to the car driven by Mr. Peck as the Peck car, and that driven by Mr. Ingram as the Michigan car. When these approaching cars (Peck's and defendant's) were within about 200 feet of each other, the Michigan car suddenly swung to its left for the obvious purpose of passing the Peck car. In doing so this

car swung so far to the left that the rear wheel was off the pavement and "skipped along" so as to throw sand off the shoulder. It was proceeding at a very rapid rate, estimated at about 60 miles per hour. Defendant testified that just as they had made the curve immediately to the south of the place of accident he observed these cars approaching, "Just as we got a little bit ahead further from the curve why this Michigan car turned out behind the Peck car, come into our alley [lane of traffic] and kept right agoing—on agoing till it hit the outside shoulder. * * * And then it swung back to the right in kind of a slow U fashion, and the hind wheels skidded and throwed sand. Now, when this car come way out to the shoulder it left an opening in the middle. That's what I headed for. And by the time I headed for that why it turned back in and boxed me in." And further, "Well, the opening that I referred to is, when the Peck car swung to the outside and that naturally leaves an opening in the center. Peck car about two feet on the other side of the line and this car going when the hind wheels hit the shoulder that leaves, I'd estimate it, somewheres around eight-foot opening between the Peck and the Michigan car." Toward that opening is where defendant went. "The Michigan car turned out till it come to the outside edge of the pavement. Then he evidently changed his mind and turned back in."

The witness Butler describing the place of the accident said in respect of skid marks and tire tracks: "Well, as I saw them after the accident, they started on the east shoulder of the road. It seemed to skip, just—it wasn't exactly a complete track. They skipped along and—like that. Made kind of a hook on the end of this line. I don't know how long the—the stem of this U was or—it came around that fashion (indicating with hands). Q. And did they lead from the pavement off to the shoulder and then back onto the pavement again? A. Yes, they did." The witness was then asked to indicate upon a map the location of the tracks made by the Michigan car so as to illustrate just what he meant by his testimony. This he did and marked with a lead pencil the course taken and the place where the two cars met. From this plat as so marked it is clear that the collision took place at or near the center of the pavement.

For plaintiff it is claimed that defendant's conduct was so obviously negligent that the jury went wrong in exonerating him. For defendant it is urged that he was confronted with a sudden emergency, created by the driver of the Michigan car and by him alone, and that as such, the court having instructed the jury in respect of that rule, the verdict is unassailable. There are many alleged errors discussed by counsel. Those deemed essential to decision will be discussed later. But first we must direct our attention to the issue of defendant's negligence. (Contributory negligence is wholly absent.)

■ Counsel for both parties seem to get considerable comfort from, and both cite and rely upon, Cosgrove v. McGonagle, 196 Minn. 6, 264 N. W. 134. While the facts there appearing are in some respects similar to those involved here, yet there are many very clear distinctions if one takes the time to read them. In the cited case defendant applied the brakes and swung to his right seeking to escape the oncoming danger of the approaching car suddenly entering his lane of traffic and by so doing landed in the ditch to his right. But there, as here, a collision between the two cars resulted, with serious injuries to the occupants of the cars involved. Here defendant did not apply his brakes until momentarily before the impact. Instead of swinging to his right he swung slightly to his left so that when the collision did occur the cars were, as we have said, virtually in the center of the pavement.

It is clear that the sudden appearance of the Michigan car upon defendant's lane of traffic created an immediate and genuine traffic emergency. If he were to swing to his right and go into the ditch, in view of the very brief time in which this decision must be made and executed, what assurance had he that he would not smash head on into the Michigan car facing him in his own lane of traffic and headed, for the moment at least, in the same general direction in which plaintiff claims defendant should have gone? How could he tell that the oncoming car would so suddenly swing back again as to head for its proper side of the pavement? When it swung onto the shoulder of the road in front of defendant's car and at an obviously reckless speed, what was defendant to do? It is easy for

counsel to sit back and look at the record and conjure things that might be done. The question is what could or should anyone do if and when confronted with such peril as here confronted defendant. He and his friends, all of whom were his passengers and guests, were facing great danger. Their lives as well as his own were in imminent peril. We cannot assume as a matter of law that he thus needlessly or improvidently exposed his and their lives to be sacrificed. He may not have chosen what we now think was the best course. Time did not permit him to weigh and consider all the facts and results then in the making that we now have before us. There was then no opportunity to speculate and to devise ways and means of avoiding a collision now so plainly available to resourceful and experienced counsel. They are viewing the situation retrospectively. These cars were approaching at a rate which would bring them into physical contact in less than one and one-half seconds. The Michigan car traveling at 60 miles per hour would cover approximately 90 feet per second. If defendant's car was traveling at 50 miles per hour the rate would be approximately 75 feet per second. A distance of approximately 200 feet separated them. What time was there for defendant to determine and decide his course? Who can say as a matter of law that he did not act as a reasonably prudent man in attempting to escape through the only hole that appeared to him? In Cosgrove v. McGonagle, 196 Minn. 6, 264 N. W. 134, disaster came because there the accused defendant swung to his right. Here it came about because defendant swung to his left. We are clearly of opinion that a fact question was presented and that the jury's verdict exonerating the defendant is amply sustained.

■ The court in charging the jury in respect of the emergency doctrine used the following language:

"So the court charges you that where a person placed in a position of danger by the negligence of another, and suddenly confronted by an imminent peril, makes an attempt to escape, he is not chargeable with negligence if in his excitement and confusion he in fact places himself in a greater peril.

"More particularly as applied to this case, if the defendant, Berning, without negligence on his part, found it necessary to decide in an emergency confronting him whether to make a full application of brakes to try to stop his car without leaving the pavement, whether to turn to the east in order to pass his car through an opening which he said then existed on the highway, or whether to turn his car to the west and go out on the shoulder—I think possibly my directions may be reversed here; you will remember the testimony and directions—in order to thus avoid the perils of a collision, you need not find him negligent merely because you may now conclude that his decision was wrong. Allowance must be made by you for the fact that he was acting in an emergency before you can find that he failed to exercise reasonable care for the safety of the plaintiffs.

"You are further instructed, however, in this respect that the doctrine that one who finds himself suddenly confronted with an emergency is not chargeable with negligence if under the stress of such emergency he does some act which he should not have done or omits to do some act which he should have done as shown in the light of subsequent more considered deliberation, does not apply in favor of one whose negligence has created the emergency."

The quoted charge as to the rule applicable where a defendant is confronted with an emergency was not as complete as it might have been. This court in Johnson v. Townsend, 195 Minn. 107, 110, 251 N. W. 859, 861, stated the rule to be as follows:

"In that situation the law is that one, suddenly confronted by a peril, through no fault of his own, who in the attempt to escape does not choose the best or safest way, should not be held negligent because of such choice unless it was so hazardous that the ordinarily prudent person would not have made it under similar conditions."

That rule was later quoted with approval in Cosgrove v. McGonagle, 196 Minn. 6, 264 N. W. 134.

This case had been tried at a prior term. That jury also had found for defendant. So there have been at least two jury trials,

each resulting in a verdict favorable to defendant. It is obvious then that plaintiff's counsel was fully informed as to the law governing this particular issue. They are men of capacity and experience. They did not see fit to request any instruction on this point and, after hearing the court's charge thereon, made no suggestion that there was any omission, error, or inadvertence in the charge as given. No exceptions thereto were taken. As far as it went we think the charge was not open to any serious objection. The court inadvertently failed to give as complete a definition of negligence in an emergency as the quoted rule we have stated required. This omission should have been called to the attention of the court at the time the charge was given; or, at least an exception should have been taken thereto, thereby giving the court an opportunity to amplify the charge in that regard. We do not favor the practice of counsel waiting until after a verdict is returned and thereafter assigning error on some omission in the charge which must have been apparent to counsel at the time the charge was given. Such practice savors too much of speculation. If a verdict is unfavorable the speculator is permitted to hold in reserve some error by which he may hope to upset an otherwise invulnerable verdict. It seems to us that counsel's right to call the attention of the court to errors and omissions in the charge, and to take exceptions thereto, so as to give the court a reasonable opportunity to amplify or correct the same, imposes a duty upon him to exercise such right.

It will be noted also that the last sentence of the second paragraph of the charge hereinbefore quoted states:

"Allowance must be made by you for the fact that he was acting in an emergency before you can find that he failed to exercise reasonable care for the safety of the plaintiffs."

This portion came immediately after the court's definition. This is the part that is perhaps somewhat inadequately stated in view of the rule we have quoted. But we think this particular sentence required counsel for plaintiff to take some action in order that, if inadequate, the court might correct the inadequacy. That the objection now made comes within the rule of our prior cases seems

clear. See Farnham v. Pepper, 193 Minn. 222, 224, 258 N. W. 293, 294; Harris v. Eggermont, 196 Minn. 469, 265 N. W. 322, 324. In the case last cited the court at pp. 472 and 473 of the Minnesota Reports reviews our prior cases. Further comment now is unnecessary. We there said:

"A litigant cannot tacitly consent to the submission of a fact issue to a jury and then, when disappointed in the verdict, obtain a new trial on the ground that it was error to submit it."

That being true with regard to the submission of a fact issue, must it not necessarily follow that an inadvertence or omission in an instruction also requires active participation on the part of counsel before he can claim reversible error?

■ Defendant was permitted to show very serious injuries to his right leg. The theory upon which this evidence went into the case was that it tended to prove the truthfulness of his claim that he had put his right foot upon the brake pedal and was so applying it when the collision occurred. Admission of this testimony is complained of and reversible error assigned. We do not believe that this was such error. To so hold is to charge the jury with general incompetency. We do not believe that this evidence can be said to have prejudiced the jury respecting the ultimate result. The claimed error, so it seems to us, is farfetched.

■ Error is also charged in that the court failed to clarify the distinction between common-law negligence and the violation of statutory duty. The court charged in this regard in language substantially as requested by plaintiff.

■ Nor are we impressed with plaintiff's claim that the court's definition of proximate cause was erroneous. At any rate, there was no objection to that portion of the charge nor any exception taken thereto at time of trial.

Judgment affirmed.

LORING, JUSTICE (dissenting).

■ To me the record appears to be conclusive of defendant's negligence and that it must be said that his action in endeavoring to pass between the oncoming cars was so hazardous that no person

in his senses could possibly have adopted such a course as compared with the simple way out of the danger by slowing down and swinging to the right onto the shoulder of the highway. At the point where the collision occurred the paved highway is straight, and at some distance south there is a curve toward the west, but the view toward the north is open and the curve had no effect upon the situation. The Peck car and the defendant's car were proceeding at 45 to 50 miles an hour toward each other. The Michigan car came up behind the Peck car and was following it at a distance of 25 to 50 feet in its rear. At a place stated by the defendant to be about 200 feet from where defendant's car then was, the Michigan car swung to its left for the purpose of passing the Peck car. In so doing it swung its left rear wheel momentarily off the pavement, causing a spurt of dust to arise. The Michigan car then swung more to its right and toward the center line of the pavement. Before the collision occurred it had passed the Peck car a short distance, estimated by one witness at ten feet and by another stated to be at a point about where its windshield was opposite the front end of the Peck car. It was also well over toward the center line before the collision occurred. As the Michigan car drew up alongside the Peck car, Peck swung to the right onto the shoulder in order to escape the consequences of the imminent collision between defendant's car and the Michigan car. According to the evidence, the defendant came straight down his own lane of traffic, made no effort to slow up until just about the time of the impact, when he testified that he "instinctively" put on his brakes, seized hold of the wheel, and, as he expressed it, "shoved it through the windshield." He said that he turned slightly to the left, and the left front wheel of his car was perhaps across the center line of the pavement. From the photographs it appears that he struck the Michigan car on its left front. The driver of the Michigan car was killed. Defendant's explanation of why he proceeded straight down the highway was that he was endeavoring to pass between the two approaching cars, which he says at the time when the Michigan car turned out appeared to be about eight feet apart. It is agreed that the Michigan car was going between 55 and 60 miles an hour.

Such being the case, the distance which would be required for it to swing out to the left, where defendant first saw it, and pass the Peck car would not be less than 150 to 200 feet; and, since the defendant was also traveling at approximately 45 miles an hour, the distance between him and the Michigan car when it first turned out must necessarily have been considerably greater than he estimated, probably not less than 300 feet, and more likely was considerably more. The Michigan car was coming at a high rate of speed and the Peck car around only ten miles an hour slower. To attempt to drive a car through an eight-foot space between them was hazardous in the extreme. No prudent person would attempt it if any alternative were available. Here defendant must have had over a city block in which to get out of the impending peril. Instead of slowing down and turning to the right, as any prudent person would have done, he headed for the place of greatest danger. Turning to the right is required by statute in case of meeting cars, and long habit in compliance with the statute and the custom has made it instinctive to do so. Measured in units of time, automobile drivers are frequently, almost constantly, confronted with the necessity of making decisions within very short periods, frequently within fractions of a second. It is not the time, stated in seconds, which measures the character of the driver's conduct. Time is always short. But if there is adequate distance to maneuver a vehicle, a driver as a matter of law should be held negligent who takes a course, as here, which is so hazardous that to any sane driver it must spell certain death to someone. The speed of vehicles and the awkwardness and recklessness of an ever-present percentage of drivers make these road hazards inevitable; but when as here the defendant had at least a city block in which to maneuver his car out of a hazardous situation he can hardly be excused for having chosen a course comparable in hazard only to the Charge of the Light Brigade at Balaklava. No man of ordinary prudence who drives a car could justify such a course. To slow down and turn to the right onto the shoulder was so obviously the only safe course that it should have been "almost instinctive." Failure to slow down immediately is alone sufficient to convict defendant of negli-

gence as a matter of law. The statute prohibits driving at a speed greater than is "reasonable and proper." There are among automobile drivers two kinds of extremely reckless people, those who try to pass another car when space does not permit and those who, seeing an oncoming car attempting such an act of recklessness, stubbornly refuse to slow down to avoid the danger. The defendant in this case was evidently a conspicuous member of the second type. The shoulder was smooth and hard and flush with the pavement. The Michigan car at no time occupied more than a few inches of it and was almost immediately back on the paved part of the highway. There was at all times, and particularly after the Michigan car swung to its right, abundant room for defendant to drive safely on the shoulder. Peck did just that in his effort to escape. Defendant should have anticipated that the Michigan car would swing to the right to avoid defendant. That is what both statute and natural instinct would impel him to do, notwithstanding his hazardous conduct in attempting to pass Peck.

■ I disagree with the paragraph numbered 2 of the majority opinion. The statute permitting exceptions to the charge on the motion for a new trial permits just what was done here, it seems to me. The failure to give the right rule as to emergencies went to the very heart of plaintiff's case. The charge was faulty on the very point most vital to plaintiff—the exception or condition without which the emergency rule should never be given. The impression necessarily left with the jury was that where one is confronted by imminent peril and in his confusion takes a wrong course he need not be found guilty of negligence even if the course chosen by him was in fact so hazardous that an ordinary prudent person under similar circumstances would have acted otherwise. This was something more than the obvious verbal "misstatement" of fact or "technical inaccuracy" referred to in Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754. The charge gave the jury the wrong impression on a "controlling proposition of law." The statute may be a bad one, but it is not for us to repeal it. It was intended to favor the losing party, not to add to his burdens by compelling him to except both at the trial and on the motion. So interpreted, it would be meaningless.

I agree that it was not error to fail to clarify the distinction between common-law negligence and the violation of a statutory duty any further than was done by the court because the court charged in the language requested by plaintiff. I think, however, that the distinction carefully made in Chandler v. Buchanan, 173 Minn. 31, 35, 216 N. W. 254, and in Dohm v. R. N. Cardozo & Bro. 165 Minn. 193, 206 N. W. 377, should be a guide to trial courts in the future.

I also agree that there was no prejudicial error in regard to the definition of proximate cause, though I much prefer that given by Mr. Justice Mitchell in Christianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 97, 69 N. W. 640.

I think the case should be reversed and be remanded for a new trial on the question of damages only.

DEVANEY, CHIEF JUSTICE (dissenting).

I agree with Mr. Justice Loring.

