## DOROTHY G. MERRITT v. OSCAR STUVE.[1]

April 16, 1943.

No. 33,401.

[1]Reported in 9 N. W. (2d) 329.

*Freeman, King & Geer,* for appellant.
*Milton Lindbloom* and *Neumeier & Torinus,* for respondent.

YOUNGDAHL, JUSTICE.

This action was begun by plaintiff as administratrix of the estate of her deceased husband, Cyril W. Merritt, for recovery of damages for wrongful death. The verdict of the jury was for plaintiff in the sum of $8,000. Defendant moved for judgment notwithstanding the verdict or a new trial and appealed from the order denying his motion.

The pertinent facts are substantially these: On March 24, 1942, decedent was traveling by motorcycle in a northerly direction on state trunk highway No. 95, approaching the state penitentiary located on the west side of the highway. Across the highway from the penitentiary, to the east thereof and slightly to the south, is a state-owned parking lot, which is adjacent to and abuts the sidewalk paralleling the highway, and is used, principally at least, for the cars and trucks of visitors, employes, and other persons having business at the prison. Approximately 100 feet south of the entrance to the prison is a gravel-packed, dirt driveway leading into the parking lot. This driveway is about 36 feet wide and meets the highway in question at right angles. In the parking lot, which extends south about 300 feet and east 200 feet, cars were parked in rows, the first of which faced the highway in question on the west, and the succeeding rows were so spaced as to permit the automobiles to be driven ahead into an open lane and out onto the driveway. Between the curb of the highway and the sidewalk, which measures approximately five feet in width, is a grass boulevard about six feet wide. In the particular portion of the boulevard immediately parallel to the west side of the sidewalk and parking lot are eight large elm trees, spaced at such distances that they extend toward the south approximately to the southwest corner of the parking lot. The highway at this point, and for a distance of at least 400 feet to the south, is level and straight and of the customary width of 36 feet. The grass boulevard and sidewalk are practically level with the highway, but the entrance into the parking lot marks a gradual slope down, which at the lowest point, some 25 feet back from the entrance to the

drive, is slightly over two feet lower than the highway. In the extreme northwest corner of the parking lot and on the south side of the entrance thereto is a sign, five feet in height, indicating that the parking lot is state property and requiring all cars parked there to be locked. On the day in question the parking lot was filled to capacity, and on the east side of the highway and to the south of the entrance into the parking lot cars were closely parked next to the curb, extending from the south line of the entrance into the parking lot down as far as the last tree on the boulevard. The most northerly car was parked within a few inches of the east curb of the highway and in such a manner that its front fenders were flush with the south line of the entrance into the parking lot. The portion of the highway here described was within a 30-mile per hour speed zone and marked with a regulation "Slow" sign visible to northbound traffic and located approximately at the last elm tree south of the entrance to the parking lot. The day was clear, visibility was good, and the highway was dry. Considerable traffic was moving on the highway.

Defendant drove his Ford cattle truck out from the parking lot into the driveway and thence out on the highway, intending to make a left turn to the south. The collision occurred between truck and motorcycle a few feet south of the point where the driveway and highway meet. There is some conflict in the testimony as to the exact position of the vehicles after they came to rest, as well as the speed at which decedent was traveling immediately prior to the accident. We are bound to accept the testimony most favorable to plaintiff in this instance, and in so doing we describe the truck as coming to rest across the highway at approximately a 45-degree angle, facing southwest, with the right front wheel about three or four feet from the west curb and the left rear wheel about four feet from the left front fender of the most northerly car parked on the east curb of the highway and very near the southerly line of the entrance to the parking lot, if extended. The length of the truck was estimated at 22 feet, and the point of impact was marked by a scratch and some in-

dentation on the left side of the truck approximately two feet in front of the rear left wheel. The most favorable estimate of decedent's traveling speed was 20 miles per hour, which we accept, and the evidence is undisputed that he approached the point of collision, on the east half of the highway. After the collision, decedent's motorcycle rested partially under the truck about two feet to the east of the yellow line dividing the highway, with considerable damage to the front portions. Decedent was not thrown clear of the motorcycle, and those first present lifted him from the wreckage. He was alive but obviously had sustained serious injury, to which he later succumbed.

Defendant's assignments of error present five principal questions on appeal:

(1) Is the driveway in question a private road or driveway under the highway traffic code so as to give decedent the right of way?

(2) Does the evidence reasonably establish negligence on the part of defendant?

(3) Was decedent contributorily negligent as a matter of law?

(4) Should the emergency rule have been submitted to the jury?

(5) Was there reversible error as a result of the language used by the court in submitting the emergency rule?

■ The lower court instructed the jury that the driveway leading into the parking lot was a private driveway and that defendant was obliged to yield the right of way to decedent under the provisions of Minn. St. 1941, § 169.20, subd. 4 (Mason St. 1940 Supp. § 2720-199), which provides:

"The driver of a vehicle entering or crossing a highway from a private road or driveway shall yield the right of way to all vehicles approaching on such highway."

Defendant contends that this was error. His position is that the driveway in question is a public highway and the foregoing statute inapplicable. He urges that the rights of the parties, insofar

as right of way is concerned, are controlled by § 169.20, subd. 1 (§ 2720-196), which provides:

"When two vehicles enter an intersection from different highways at approximately the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right."

Defendant was approaching from the right, and he asserts that under this section of the statute he had the right of way. The highway traffic regulation act defines the terms "street or highway" and "private road or driveway," respectively, as follows:

*"Street or highway.* The entire width between property lines of every way or place of whatever nature when any part thereof is open to the use of the public, as a matter of right, for purposes of vehicular traffic." § 169.01, subd. 29 (§ 2720-151[28]).

*"Private road or driveway.* Every way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner but not by other persons." § 169.01, subd. 30 (§ 2720-151[29]).

The determination of whether the roadway leading from the parking lot to the public highway was a private road or a public highway is important, because of the right of way accorded to a driver on a public highway over one entering the highway from a private road. Defendant urges that the driveway was a public highway by reason of its ownership by the state and, further, because it was open to the public for use. Plaintiff counters with the assertion that the statutory provisions, reasonably construed, designate the road as a private driveway, and that it was not a public highway, under the statutory definition, because it was not open for public use, as a matter of right, but only as a privilege at the sufferance of the warden.

It is conceded that the parking lot and driveway leading thereto were state-owned property, a part of the prison site and immediately adjacent to the warden's home directly across the street from the prison. The evidence indicates that the use of the lot

was limited to persons having business at the prison and employes thereof. There is nothing in the record to suggest that the driveway or parking lot was at any time used as a thoroughfare or for general travel, and from its very nature and location it would be unsuited for that purpose. The prison authorities exercised certain control and regulatory supervision over the lot, as manifested by the erection of the sign in the extreme northwest corner of the parking lot at the entrance thereto, with this admonition, "Cars parked here must be locked. State property."

In our interpretation of the statutes pertinent to this issue, a construction that is reasonable and practical must be given. 6 Dunnell, Dig. & Supp. § 8939, and cases cited. A construction which would result in absurdity, injustice, or inconvenience should be avoided. *Id.* § 8947. The correct rule in such cases was aptly stated by Justice Mitchell in International Trust Co. v. American L. & T. Co. 62 Minn. 501, 503, 65 N. W. 78, 79, 632, as follows:

"It is always an unsafe way of construing a statute or contract to divide it, by a process of etymological dissection, into separate words, and then apply to each, thus separated from its context, some particular definition given by lexicographers, and then reconstruct the instrument upon the basis of these definitions. An instrument must always be construed as a whole, and the particular meaning to be attached to any word or phrase is usually to be ascertained from the context, the nature of the subject treated of, and the purpose or intention of the parties who executed the contract, or of the body which enacted or framed the statute or constitution."

Applying these well established principles of construction to the statutory provisions under consideration, it is our opinion that the road in the instant case is a "private road or driveway" as distinguished from a public "street or highway." The words "in private ownership" should not be separated from their context and given a strained or technical meaning but should be considered in connection with the other language of the statute and in

the light of the general purpose of the legislation. 6 Dunnell, Dig. & Supp. § 8951.

That the state, a body politic, may be considered as, and conduct its business after the manner of, an individual has been so held in State ex rel. Equity Farms, Inc. v. Hubbard, 203 Minn. 111, 280 N. W. 9. A distinction was thereby made between the state as representing a composite aggregation of all persons who make up its citizenry and the state as a unit with "proprietary rights * * * as absolute and unqualified as those of an individual." 6 Dunnell, Dig. & Supp. § 8829. We believe there would be little quarrel with the statement that the state may and does own property, both real and personal, to which the general public has no right of use, but rather to which the attributes of private ownership have attached and are exercised.

It seems agreed that the test to be used in determining whether a given roadway is public or private does not turn upon the amount of travel or use made thereof, but rather upon the right of the public generally to use the way for vehicular traffic. In re Cox, 140 Misc. 313, 250 N. Y. S. 528; State v. Root, 54 Ohio App. 412, 7 N. E. (2d) 664, affirmed, 132 Ohio St. 229, 6 N. E. (2d) 979; Kemmish v. McCoid, 193 Iowa 958, 185 N. W. 628; Surratt v. Robinson, 151 Md. 658, 135 A. 838, 50 A. L. R. 280. In the instance of a highway, constructed, dedicated, and maintained for the benefit of the public generally, each individual has the right to demand its use under the same terms and conditions as all other persons, and were a regulation enforced limiting its use to a particular class of persons, those so deprived would readily be heard to complain. In the instant case, however, it cannot be questioned that the prison authorities could limit the use of the driveway in question to employes of the institution, thereby barring the public generally; or, further, could in isolated instances permit its use by particular individuals, depending upon the facts and circumstances of each case; or that it could, in fact, close the driveway to all traffic of whatever kind. It is obvious, therefore, that the driveway is not one that the public "as a matter of right"

has the use of for purposes of vehicular traffic, and that it does not fall within the definition of "street or highway" as designated in § 169.01, subd. 29, *supra*.

This precise question was considered in State v. Root, 54 Ohio App. 412, 414, 7 N. E. (2d) 664, 665, *supra,* where the court said:

"The simple question presented is, therefore: Is the driveway into Longview Hospital a public road or highway? The evidence shows the driveway is open to the public at least to the extent of those having business with the institution. There would probably be no objection to the public using the driveway in motor vehicles, although merely prompted by a desire to inspect the buildings and grounds. It is obvious, however, that there must be a manifest difference between this driveway and any ordinary street or highway over which the public is permitted to travel without any restrictions except those necessarily imposed for the safety of fellow travelers.

"The driveway is an appurtenance of the institution, directly connected therewith, and established and maintained solely for the convenience of those who in some manner seek to reach or leave the institution. It runs through state owned property, it is true, but this of itself cannot constitute it a public highway, simply because it may be used by the public. It is subject to almost unlimited regulation by those having charge of the institution and could be entirely closed to vehicular traffic if those in charge of the institution saw fit to so ordain."

Subsequent to the oral argument, defendant called the court's attention to a recent Michigan case, Buttermore v. Faleris, 304 Mich. 294, 8 N. W. (2d) 72, 73, in support of his contention that the road leading from the parking lot is a public highway. This case, we believe, is clearly distinguishable on the facts. The road there involved was a driveway leading into a public park, the use of which was open to the public generally. It is significant that the Michigan statute defining a highway excludes from the term "a roadway or driveway upon grounds owned by private persons,

colleges, universities or other institutions." No authorities are cited or discussed in that case, and it simply holds that the driveway into the public park was a public highway within the Michigan statutory provision. In the instant case there has existed a privilege extended by the prison authorities to the public to use the driveway and parking lot, but we cannot say that this has approached a right to continue its use.

In determining the road to be a private drive rather than a public highway, we are placing a reasonable construction upon the statutes and one that is also in accord with the plain principles of common sense. The highway traffic act is broad and inclusive. The legislature in the enactment of its various provisions sought to anticipate every probable situation or condition likely to arise or exist in the use of private roads or public highways. The intention seems to have been to include all roads within the two classes, *i. e.,* private roads or public highways, and, since the driveway in the instant case fails to meet the definitive requirements of a "street or highway," it must, of necessity, be considered a "private road or driveway," at least insofar as the regulatory provisions governing the instant case are concerned.

What may or may not be considered a private driveway within the meaning of the statute must be determined from all the facts and circumstances in each particular case, but, insofar as the intention of the legislature in the instant case is concerned, we have little doubt. A practical and sensible application of the statute compels this inescapable conclusion. To hold otherwise would be to place upon the public, traveling over well-marked and generally known state trunk highways, the constant burden and responsibility of watching for possible traffic to emerge from any roadway or driveway located upon state-owned property which the public in some measure had the immediate privilege to use, no matter how obscure or little traveled. Better, we believe, that the duty rest upon the few availing themselves of this privilege to yield the prior right to those operating vehicles on the main artery of travel.

54

We hold, therefore, that the driveway in question is a private road or driveway, and hence traffic emerging therefrom is governed by § 169.20, subd. 4, *supra*. The court properly instructed the jury that decedent had the right of way.

■ Having determined that decedent had the right of way, we have no difficulty in holding that the evidence reasonably establishes negligence on the part of defendant. Under § 169.20, subd. 4, it was *prima facie* negligence for defendant to fail to yield decedent the right of way. It was the duty of defendant to exercise reasonable care, and he should not have entered the highway unless it was clearly manifest to him that it could be entered with safety to both drivers. If there was a reasonable chance of a collision with the driver coming from the south, it was defendant's duty to wait and permit him to pass. He was not permitted to take close chances or to assume that the motorcycle would find an opening through which to pass. Coming into a busy public highway such as the one here involved and with the intention of making a left turn involved considerable danger. It was a suicidal venture unless the driver was alert and cautiously aware of all the surrounding circumstances, and more especially of the traffic coming from the south, in view of the obstructions which were concededly present. Defendant testified that he knew this to be a heavily traveled highway. He was also aware of the obstructions in relation to the traffic coming from the south. When he came to the east curb he looked and saw nothing. It is obvious he was correct in this, because his view was obstructed. When he had passed the obstructions and his view was clear, he proceeded into this busy public highway without stopping again. He did not blow his horn, nor did he know what might be coming from the south until a portion of his truck was in the highway itself. He stated that he first saw decedent when his cab had emerged from the row of parked cars at the curb. That would place his truck at least seven feet into the intersection.

With respect to obstructions to his view from the south, defendant testified:

"Q. And then of course you couldn't see very well towards the south because there was all this string of cars here?

"A. Well, they made some obstruction at the time.

"Q. And the top of the cars were higher than your eyesight. They were six feet high and your eyesight was five feet four—I think you told me. So that there was considerable obstruction to your view looking south. That is a fact, is it not?

"A. Yes, as far as the parked cars are concerned.

"Q. And as far as the trunks of all those eight trees are concerned. That obstructed your view to the south, didn't it?

"A. It did some, yes.

\*    \*    \*    \*    \*

"Q. You knew that whatever danger there might be would be somebody coming from the south?

"A. That is right.

"Q. But you did not see anybody?

"A. Not at that time."

The issue of negligence is generally a fact question for the jury to determine. Abraham v. Byman, 214 Minn. 355, 8 N. W. (2d) 231; 4 Dunnell, Dig. & Supp. § 7048, and cases there cited. Under the facts here involved, this issue was properly submitted to the jury, and there is sufficient evidence to sustain the jury's finding of negligence on the part of defendant.

■ The issue of contributory negligence presents a more difficult problem. Decedent's lips are stilled by death, and we do not have the benefit of his explanation of the accident. There were only two eyewitnesses to the collision—defendant and his helper. In addition to this testimony, we must rely upon the physical facts and such reasonable inferences as may be drawn from the evidence. Defendant vigorously urges that decedent was contributorily negligent as a matter of law. It is his position that when the front end of the truck moved out into the highway from beyond the line of parked cars the motorcycle was at least three seconds away, in point of time, because it would take the truck that long

to move its own length beyond the obstructions. If, then, suggests defendant, decedent was traveling 20 miles per hour, he would proceed forward a distance of 29 feet per second and in three seconds of time would be at least 87 feet from the point of impact. Thus it is claimed that decedent, in the exercise of ordinary care, could have avoided the accident in the first instance by an immediate application of his brakes, and then, if further precaution was necessary, by turning either to his left or right. Plaintiff, on the other hand, asserts that defendant in this argument is assuming a state of facts more favorable than the evidence warrants.

The physical facts and the testimony as a whole justified the jury in believing that the interval of time decedent had in which to determine how to avoid the accident was very short. At the scene of the accident, defendant was asked how the accident happened; he replied: "Well, I was coming out here and this motorcycle came down the street 35 miles an hour and run into it." Decedent answered, "I never did. I wasn't making over 20. You never gave me a chance." The facts most favorable to plaintiff would reasonably justify an inference that it was a matter of one or two seconds. Defendant attempts to attach contributory negligence to decedent on the strength of the premise that this interval of time was a matter of at least three seconds. The fallacy in defendant's conclusion is that he has adopted a factual premise more favorable to himself than the testimony justifies. Defendant himself testified that the cab of his truck had cleared the parked cars when he first saw decedent. That would indicate that the truck traveled an additional 12 feet or more before the collision. At the rate of 5 miles per hour, he would travel 7-1/3 feet per second. Thus, decedent had two seconds at the most to determine what course to pursue. At 20 miles per hour, he was then 58 feet from the point of impact. The jury was not bound to accept defendant's estimate of his own speed. It was only his opinion, and the jury could consider all the surrounding circumstances in determining at what rate of speed the truck was actually travel-

ing. If they found that it was traveling 10 miles per hour, as they reasonably could have done, then decedent would have had only one second to determine how to avoid the accident when he was 29 feet from the point of impact. When he saw defendant at that instant, he had a right to assume that defendant would exercise reasonable care and yield the right of way; and when, in that split second or two, he discovered to the contrary, we cannot say, as a matter of law, that his conduct was not that of an ordinarily prudent person. In that very short interval of time and in that equally short distance from the point of impact, the ordinarily careful and prudent person would have little choice in the determination of what would be the wisest or best course to follow. It is not difficult after an accident has happened to blueprint by mathematical nicety and precision a course of conduct which, if followed, might have averted the unfortunate results of the accident. To hold decedent to that standard of care would be exacting a greater degree of care than that of the ordinarily prudent individual. Defendant's argument would be forceful and logical before a trier of fact, but it loses its efficacy and persuasiveness before a court of review, because it is not founded upon a premise of fact as favorable to plaintiff as the verdict of the jury requires.

Since each case is determined upon its own facts, it is difficult to find precedents that are squarely in point. Helpful, however, are the following decisions: Blom v. Wilson, 209 Minn. 419, 296 N. W. 502; Behr v. Schmidt, 206 Minn. 378, 288 N. W. 722; Boerner v. Wiemann, 206 Minn. 548, 289 N. W. 562; Dehen v. Berning, 198 Minn. 522, 270 N. W. 602; Smith v. Carlson, 209 Minn. 268, 296 N. W. 132. We conclude that the evidence justified the submission of the issue of contributory negligence to the jury and that there is reasonable evidence to sustain the verdict of the jury on this issue.

What we have said on the issue of contributory negligence applies with equal force here as we discuss the question whether the emergency rule should have been submitted to the jury. De-

cedent had the responsibility of watching the highway ahead to see whether any of the parked cars would move out of their parked positions, and also of giving the general attention required in the operation of his motorcycle. The jury could well have found that, as he approached the place where the private road meets the public highway, the front of defendant's truck, without warning, was suddenly projected into the highway and that decedent was confronted by a sudden emergency, having only a second or two to determine what was the wisest or best course to follow. Although he lived for awhile at Stillwater, the record is silent as to decedent's familiarity with this side road. At any rate, the evidence is such that the jury could well have found that his view was so obstructed by the row of trees, the parked cars on the highway, and the cars in the parking lot that he could not have seen defendant's truck as it was being operated on the lot toward the entrance to the highway, and that the first time decedent became aware of this truck was when he was suddenly confronted with the emergency of observing it immediately in front of him and obstructing his normal path of travel. It is to be observed that the trial court did not instruct the jury that the evidence presented a situation to which they necessarily had to apply the emergency doctrine. It was left to them to determine whether it should be applied, depending on how the facts were decided.

We believe that the facts warranted the submission of the emergency rule to the jury. Packar v. Brooks, 211 Minn. 99, 300 N. W. 400; Blom v. Wilson, 209 Minn. 419, 296 N. W. 502.

■ Complaint is made because of the language used by the trial court in submitting the emergency rule to the jury. The court submitted the rule in the following language:

"When one is placed by the negligent act of another in such a position that he is compelled to choose upon the instant and in the face of apparent and great impending peril between different hazards, and he makes such a choice as a person of ordinary prudence, placed in the same situation, would probably have made,

and injury results therefrom, the fact that if he had chosen the other hazard he would have escaped injury does not show negligence."

The correct rule as it has been approved by this court is as follows:

"One, suddenly confronted by a peril, through no fault of his own, who in the attempt to escape does not choose the best or safest way, should not be held negligent because of such choice unless it was so hazardous that the ordinarily prudent person would not have made it under similar conditions." Johnson v. Townsend, 195 Minn. 107, 110, 261 N. W. 859, 861.

As far as it went, the charge of the court was correct. When the court used the expression "by the negligent act of another," by implication it would ordinarily be understood to mean that there could be negligence on the part of the person invoking the rule. We do not, however, approve the rule in this form, and we adhere to the rule as we have previously declared it to be. We feel that, at the most, the charge was incomplete and that it was the duty of counsel to call the court's attention to the omission before the jury retired. No exceptions were taken to the language on this part of the charge nor was any request made to amplify it. In the absence of such a request, defendant cannot now urge this as error. Dehen v. Berning, 198 Minn. 522, 270 N. W. 602; Farnham v. Pepper, 193 Minn. 222, 258 N. W. 293; Harris v. Eggermont, 196 Minn. 469, 265 N. W. 322.

Affirmed.