FRED ICKLER v. WILLIAM P. HILGER, *d. b. a.*
THE HILGER COMPANY.[1]

April 22, 1943.

No. 33,361.

[1]Reported in 10 N. W. (2d) 277.

*Charles H. Richter* and *Frank A. Whiteley,* for appellant.
*Atwood & Quinlivan,* for respondent.

YOUNGDAHL, JUSTICE.

In this action plaintiff claims that pursuant to the terms and conditions of an oral contract between the parties he is entitled to recover from defendant the sum of $12,502.80, representing the proceeds from a certain reserve commission account, hereinafter described, and compensation for services rendered to defendant. After a jury trial, a verdict was returned for plaintiff for $12,460. From an order denying his alternative motion for judgment or a new trial, defendant appeals.

It appears that plaintiff entered defendant's employ in November 1929 as a salesman on a commission basis. At that time and for two or three years prior thereto, defendant had been engaged in manufacturing and selling frost shields for automobiles. The business was new and more or less in the formative and experimental stage. The demand for defendant's product was naturally season-

al, with a selling period therefor extending from July through December. During the first few years of plaintiff's employ he spent most of his time in sales work on the road during the sales season. After 1932, however, he began to devote an increasingly greater amount of time in the shop, where the merchandise was manufactured. Some minor adjustments were made in plaintiff's compensation during this time, which are immaterial here. In 1934 defendant began manufacturing and selling sanding machines in addition to frost shields. Plaintiff assisted materially in the development of the new item, both from the standpoint of mechanical improvement and sales promotion. Defendant's business was showing a considerable increase in sales and continued thereafter to improve. This relationship between the parties continued with little change until the early part of 1936. On March 2, 1936, they agreed that plaintiff should temporarily abandon his sales work for the most part and devote a greater portion of his time to work inside the factory. A written contract for one year was executed, embodying the terms and conditions agreed to by the parties and specifying particularly plaintiff's compensation for the year at $3,000 in salary, plus a drawing account of $35 per week, with the further proviso that in the event the net profits of the business for the year 1936 exceeded $20,000 plaintiff would receive ten per-cent of such excess as a bonus. No further written contracts were executed with respect to plaintiff's compensation for subsequent years, but plaintiff did receive a weekly compensation of $52.50 for 1937, and of $60 for 1938, 1939, and up to and including May 16, 1940, when the relationship of employer and employe was severed. From 1936 to May 16, 1940, plaintiff received a total remuneration, including both salary and bonus, of approximately $16,000.

The particular circumstances which gave rise to the present cause of action are substantially these: In 1936 defendant set up on his books and records an account which during the period from 1936 to sometime in April 1940 was variously designated as the "Fred Ickler Pending Commission Account," "Ickler Commission a/c,"

"Ickler F. Note a/c," and sometimes simply "F. Ickler," but which for simplification we shall hereinafter refer to as the "commission reserve account." The respective positions of the parties as to the history of the account ownership, its operative features, and general purposes are diametrically opposed. But, in any event, the account was active, and entries were made therein from time to time until sometime in April 1940, when a credit balance of $12,502.80 had accrued. Plaintiff testified that this account was opened for the purpose of carrying into effect an agreement reached with defendant in the early part of 1937 whereby plaintiff was to receive certain commissions on sales in addition to his regular salary and bonus. He asserts that the agreement was, retroactive, in that commissions from sales covering the preceding two years were to be included in the account. In February 1938 another change was made, and plaintiff claims that the account was then credited with a straight two percent on all sales rather than commissions. This figure was reduced to one percent at some date prior to May 1940 without plaintiff's knowledge. The purpose of the account, as explained by plaintiff, was to compensate him for the interest he had taken in defendant's business from the beginning, the amount of effort he had expended in developing the sanding machine; in short, it reflected defendant's general appreciation for his hard work and loyalty. Both parties agree that involved in the account were certain entries representing income tax payments made by defendant in plaintiff's name and charged back to the account. Plaintiff claims that the account was also credited with half the amount saved by defendant in his own income taxes because of setting up this account for plaintiff's benefit, thereby placing defendant in a lower income tax bracket. These particular transactions are important here only insofar as they indicate ownership of the fund represented by the account. Defendant caused entries to be made in the account crediting interest thereon at the rate of seven percent per annum. In April 1940 plaintiff contends that defendant was interested in procuring a sizable bank loan, which could not be approved until plaintiff's

commission account, representing a liability of defendant, was released or otherwise settled; that defendant advised him that if he would execute the necessary release defendant shortly thereafter would incorporate his company and give plaintiff an interest therein proportionate to his pending commission account, or, in the event of failure to carry out this plan, that a payment in cash would be made to plaintiff of the fund so allocated for his benefit. To this plaintiff agreed. The release was executed, and plaintiff received at that time $750, which he claims represented a portion of defendant's savings on his (defendant's) income taxes by reason of the commission reserve account. Within a few days thereafter plaintiff left defendant's employ as a result of a quarrel, and defendant refused to fulfill his promises with respect to a share of the business or payment of the cash balance in the commission account.

Defendant's version of the account is that the fund was started in the first instance by way of a check-up to determine whether he had bargained wisely when he brought plaintiff into the office on a salary rather than to permit him to remain on the road as a salesman on a commission basis. He shortly abandoned this use of the account, however, and decided to allow the fund to accumulate therein with the hope that his business ventures would be sufficiently profitable to enable him to repay his loyal and faithful employes by a substantial bonus for their services. He asserts that the account was used for other purposes from time to time, but, according to defendant's version, his altruistic motive in building a bonus fund was the predominating reason for its continued existence. He disclaims any arrangement with plaintiff as to the latter's ownership thereof and denies that such was contemplated by him at any time. Defendant contends that the release was requested after the account had been described by defendant as "meaningless," and defendant contends that the sole purpose of the release was to clear the books and return the fund into income after defendant had sustained severe losses in his business and was no longer able to put into effect his philan-

thropic plan. Defendant testified that he made no promises to plaintiff at the time the release was executed and that plaintiff was "very pleased" when he received a check for $750, which came to him as a surprise. From all the facts and circumstances herein the jury determined that ownership of the fund in question was in plaintiff.

Under defendant's numerous assignments of error, he presents three principal issues for review, *viz.:* (1) That he is entitled to a reversal because no definite binding agreement was proved under which plaintiff would be entitled to receive the reserve commission account; (2) that the court erred in instructing the jury that if they found that plaintiff was entitled to recover any amount he was entitled to a verdict for $12,502.80; (3) that plaintiff's counsel was guilty of misconduct in his closing argument, creating passion and prejudice in the minds of the jury.

■ Defendant contends that plaintiff failed to establish a definite legal contract under which he was obligated to pay plaintiff the fund represented by the reserve commission account. He asserts, therefore, that he was entitled to judgment notwithstanding the verdict in the court below, and, this having been denied, that he is entitled to a reversal here. His position is that plaintiff's claim is fictitious and unfounded, that it was entirely impeached and discredited at the trial, and, even in the light most favorable to plaintiff, that it is so indefinite and inconsistent that it was entitled to no credence whatsoever. Plaintiff, on the contrary, insists that the conversations of the parties, together with defendant's books and records, unmistakably point to an agreement on defendant's part to set up the reserve commission account for plaintiff's benefit and that there is reasonable and ample support in the evidence therefor.

At the outset we follow the well recognized rule that the evidence must be considered in the light most favorable to plaintiff, as stated in our most recent decision of Merritt v. Stuve, 215 Minn. 44, 57, 9 N. W. (2d) 329. With reference to the agreement to set up the reserve commission account, plaintiff testified:

"Mr. Hilger said he appreciated the efforts I put forth there and felt I was part of the business; the efforts I put forth and long hours resulted in the profits he made, and told me he wanted to take care of me on it, but he didn't want to put a partner in the business, but if anything would happen to him at any time he wanted to see I was taken care of and that I would continue along with the business; and for that reason he set up—agreed to set up a commission account for me on these commissions—"

And with respect to defendant's paying the interest on the account, plaintiff said:

"Yes, Mr. Hilger told me that they would pay me the regular interest on the account; * * * that he would pay me seven percent on this amount; seven percent interest. However, he said he couldn't afford to take the cash out of the business at that time, but if anything ever happened to him he would want me to continue in the business and go ahead and have my interest protected. And that was the reason the account was set up in the form it was; and so that if anything happened to him it would show I had this interest in the business. He also said he wanted to incorporate and that I would be given that interest in case anything happened."

In addition to this evidence, the record indicates that defendant told plaintiff on several occasions that the reserve commission account was his and that he was either to have an interest in the business, as incorporated, or was to receive the cash from this account. Defendant's records tend to corroborate plaintiff's position that he was the owner and entitled to the proceeds of the account. The title of the account, although changed several times, always included plaintiff's name. Commission statements were issued intermittently to plaintiff, indicating that the money in this account was owing to him. Further, plaintiff reported the amounts evidenced by this account in his annual income tax returns on an accrual basis, and defendant paid the income taxes thereon, both to the state and federal government. Defendant asserts that his

payment of the income taxes on this account was inconsistent with plaintiff's claim of ownership therein, but it will be noted that the amounts so paid on the income taxes were charged back to the account so that defendant was merely advancing these sums to plaintiff and not actually paying the taxes. Defendant also claims inconsistency in plaintiff's testimony that he (plaintiff) received one-half of the savings to defendant in his income taxes by virtue of setting up the account and that this claim is an admission that the account belonged to him (defendant). What conclusions might be drawn from this most unusual procedure insofar as it related to ownership of the account was one of the factors for the jury's consideration. Defendant suggests that plaintiff was amply compensated by way of salary, exclusive of this account, for his services. In 1936 plaintiff received approximately $4,000 under a salary contract and comparable amounts thereafter. With the increased sales (from $73,000 in 1935 to approximately $200,000 in 1937), however, that resulted during the subsequent years, it was for the jury to determine whether plaintiff was entitled to the additional compensation under all the facts and circumstances in this case. The jury could well find that plaintiff's services warranted the additional compensation represented by the reserve commission account when viewed in the light of the relationship between the parties, plaintiff's contribution to the growing business, and the conversations relating thereto. Although plaintiff had a very modest start as a commission salesman in defendant's business in 1929, his importance in its development and success in later years cannot be denied, especially in connection with the growth of the sanding machine business, which was the most profitable of defendant's enterprises. Plaintiff assisted in designing the sander and contributed some of his own money, efforts, and inventive ability to its promotion. At one time defendant was ready to dispose of his interest in the sanding machines for his investment therein of $400, but plaintiff encouraged him to wait until an opportunity presented itself to test the salability of the machines on the market. Plaintiff suc-

ceeded in promoting the sales, and his efforts were such that the jury could well find ample consideration to defendant in setting up the reserve commission account for plaintiff as a reward for his efforts in helping to initiate and promote this business. Defendant makes much of the fact that plaintiff did not claim the money in this account until after he had left defendant's employ, engaged in a competing business, and was sued by defendant in an action for unfair competition. We agree that this fact, together with other inconsistencies herein, makes good argument before a trier of fact, but as we said in Merritt v. Stuve, 215 Minn. 44, 57, 9 N. W. (2d) 329, 335, *supra,* such "argument * * * loses its efficacy and persuasiveness before a court of review," where we are bound to accept the evidence most favorable to the prevailing party and determine whether there is any evidence reasonably tending to sustain the verdict. There was ample evidence here to justify the jury's finding that an enforceable contract existed between the parties establishing plaintiff as the owner of the reserve commission account, and that plaintiff was entitled to the fund represented thereby. We are, therefore, governed by the well-recognized rule that where there is sufficient evidence reasonably tending to sustain the verdict it will not be disturbed on review. 1 Dunnell, Dig. & Supp. § 415.

It is unnecessary to discuss in detail the evidence on the issue of fraud in procuring the release. It was directly in conflict, and the jury accepted plaintiff's version. The testimony reasonably supports the finding of fraud in the execution of the release.

■ Defendant assails as error that portion of the court's charge to the jury as follows:

"In the event that you find that the plaintiff is entitled to recover, he is entitled to recover $12,502.80, less $750.00, which the plaintiff received at the time he signed the release. I have computed that. I have figured the interest and I have deducted the $750.00—and if I make a mistake I want counsel to correct me.

I have added interest on the amount. After deducting the $750.00, I figure the total amount then to be $12,460.00."

The court was requested by defendant to give the following two instructions:

"The contract dated March 2nd, 1936, states that it is full pay to plaintiff for his entire services for the year ending February 1st, 1937; it appears that $2,150.00 of the $12,502.80 shown on Exhibit 'M' was entered during that year; there is no evidence in this case showing any right on the part of plaintiff to that part of the account."

And further:

"The plaintiff claims he is entitled to the entire sum of $12,-502.80 and interest, and the court instructs you that this is not a case in which you can award a part of it to the plaintiff, but if the plaintiff is entitled to recover anything, he must not only prove that the release was obtained by fraud but he must also prove his right to the entire fund by the clear weight of the evidence."

Defendant asserts that he was entitled to both of the foregoing instructions and that the court's failure so to charge constituted reversible error. These two requested instructions are plainly inconsistent. The court in its own language charged the jury substantially as requested in the latter instruction. We feel that, in view of the ambiguity of defendant's requests and absent any exceptions to the charge as given, defendant's objections are not now well taken. The most that can now be asserted by defendant, because of the inconsistent character of his own requested instructions, is that the court's charge was incomplete and did not fully comply with his two requests. Assuming, without conceding, that the charge as given was incomplete in this respect, counsel cannot now be heard to complain. Defendant surely was aware of the fact, after the completion of the court's charge, that the court had submitted the case on the "all or nothing" theory. The complete

92

absence of any objection before the jury retired, in view of the facts here presented, constituted acquiescence by defendant in the charge as given, and it became the law of the case. Kovaniemi v. Sherman, 192 Minn. 395, 256 N. W. 661; Dehen v. Berning, 198 Minn. 522, 270 N. W. 602; State v. VanGuilder, 199 Minn. 214, 271 N. W. 473; Timmerman v. March, 199 Minn. 376, 271 N. W. 697; State v. Sprague, 201 Minn. 415, 276 N. W. 744; Parkin v. Sykes, 203 Minn. 249, 280 N. W. 849. It is commendable practice for trial courts to endeavor to simplify the issues presented to juries and to eliminate, by agreement between counsel, as much mathematical computation or calculation on the jury's part as possible. This the trial court endeavored to do by making the computation itself, including interest, and inserting the entire amount in the verdict. This procedure apparently met with defendant's approval, for, despite his previously requested instructions, he was not heard to protest or complain. He cannot be permitted to stand by without objection and speculate on the outcome of the verdict. As said by Mr. Justice Olson, speaking for the court, in Dehen v. Berning, 198 Minn. 522, 528, 270 N. W. 602, 605, *supra:*

"We do not favor the practice of counsel waiting until after a verdict is returned and thereafter assigning error on some omission in the charge which must have been apparent to counsel at the time the charge was given. Such practice savors too much of speculation. If a verdict is unfavorable the speculator is permitted to hold in reserve some error by which he may hope to upset an otherwise invulnerable verdict. It seems to us that counsel's right to call the attention of the court to errors and omissions in the charge, and to take exceptions thereto, so as to give the court a reasonable opportunity to amplify or correct the same, imposes a duty upon him to exercise such right."

We believe this language is applicable to the present situation, and we conclude, therefore, that defendant's contention that the court erred in charging the jury as to the amount to be recovered is without merit.

■ Defendant also complains of the argument of plaintiff's counsel to the jury, asserting that it was such as to create passion and prejudice in the minds of the jurors. No objections were taken to the argument at the conclusion thereof nor at any time thereafter until specified in the notice of motion for judgment notwithstanding the verdict or a new trial. At that stage of the case the objections were too late. We have repeatedly advised counsel in our decisions of the unavailability of such objections unless exceptions are taken before the jury retires. 6 Dunnell, Dig. & Supp. § 9800; Symons v. G. N. Ry. Co. 208 Minn. 240, 293 N. W. 303; State v. Jansen, 207 Minn. 250, 290 N. W. 557; State v. Soltau, 212 Minn. 20, 2 N. W. (2d) 155.

This action was tried vigorously and thoroughly on both sides. The jury had ample opportunity to determine from the facts so ably presented the precise relationship existing between the parties and whether or not there was an enforceable contract establishing plaintiff as the owner of the reserve commission account. The trial court likewise was afforded the opportunity of observing the demeanor of the witnesses on the stand and was enabled thereby correctly to appraise the credibility of their testimony. The jury having found for plaintiff under these circumstances and the trial court having determined that the verdict was justified by the evidence, we conclude that there should be an affirmance.

Affirmed.