## GEORGE O. FORSETH v. J. F. QUEST FOUNDRY COMPANY.

127 N. W. (2d) 699.

April 10, 1964—No. 39,127.

*Best, Flanagan, Lewis, Simonet & Bellows, Leonard W. Simonet,* and *Robert M. Skare,* for appellant.

*Eugene A. O'Brien,* for respondent.

NELSON, JUSTICE.

George O. Forseth brings this action against J. F. Quest Foundry Company for $4,481.38 claimed due him for sales commissions credited to his account under an employment agreement which set forth the terms of his compensation as follows:

"6. A base salary of $350.00 per month, plus 5% commission on all new work for the first year after such work has been secured. The new man [plaintiff] will receive a $500.00 per month guarantee for the first six month training period. After this time he will participate in new work incentive plan and his base will be decreased by equal amounts of $25.00 per month for six months at which time the base of $350.00 will be reached. A maximum monthly income of $850.00 is contemplated with the understanding that any amount in excess of this figure will be held as a credit for future months that drop below $550.00.

\*   \*   \*   \*   \*

"This agreement is intended to be of a continuing nature and it is subject to a 30 day notice by either party if there is an intended change."

Plaintiff's employment covered the period between July 1, 1960, and July 27, 1962, when a strike closed defendant's plant. On July 30,

1962, he was advised by defendant's president that the factory would be closed indefinitely. Some 6 weeks later plaintiff obtained employment with another company in Iowa.

During his employment with defendant, in months in which his salary and commissions exceeded the sum of $850, plaintiff was given statements by defendant in which the additional commissions were designated merely as "reserve." In months in which his salary and commissions were less than $550 per month, defendant was to make up the difference by drawing against and paying him from this "reserve" account.[1] When his employment was terminated, there remained in this "reserve" account the sum of $4,481.38. Defendant at all times refused to pay any part of this sum to plaintiff, contending that under the agreement there was no obligation to pay plaintiff any sums in excess of $850 per month.

At the trial plaintiff testified that the first time surplus commissions were transferred to the "reserve" account he made inquiry of defendant's president as to the purpose of such transfer and was advised by the latter that such commissions "went into a reserve for my account" and "as a credit for future months" in which the total of his salary and commissions might be less than $550.

At the close of the testimony, the trial court directed a verdict in defendant's favor on the ground that—

"* * * this man [plaintiff] has been paid, and it is the interpretation of the Court that the credit was set up for the purpose of paying salaries only, and he is not entitled to any reserve that is left in the fund because the contract has been terminated and he has been paid in full for the entire time he worked * * *."

This is an appeal from an order denying plaintiff's subsequent motion for a new trial.

Plaintiff contends that he is the owner of the commissions held by

---

[1]During the month of August 1962 plaintiff was paid commissions earned during the month of July in the sum of $461.97, plus one week's vacation pay of $87.50, or a total of $549.47. During October 1962 he was given a check for $31 earned during the month of August 1962.

defendant for his account as above described; and that if the language of the employment agreement casts any doubt on this it should be construed against defendant who was responsible for the choice of terms used therein.

■ It is the unanimous view of this court that a reasonable construction of paragraph 6 of the employment agreement establishes that the parties intended thereby that after the first 6 months plaintiff was to receive for his services a basic salary of $350 per month regardless of the amount of his sales; that in addition from and only from an account based upon and realized from a 5-percent commission on his sales he was to receive additional sums to increase his monthly income up to $550 for each month that there were funds on hand in such account sufficient to do so; that if commissions in any month exceeded the amount required for this, he was to receive from such excess additional sums up to a maximum of $850 for that particular month; and that any sums in excess thereof earned during such a month were to be retained by defendant in a reserve account from which plaintiff was to be paid sufficient funds to bring future months, when commissions fell short of the minimum, up to such minimum.

It is true that the first sentence of paragraph 6 mentions a 5-percent commission on all new work, but this is expressly limited by the later provision in the paragraph which clearly manifests an intention that plaintiff's maximum income shall not exceed $850 per month and that a minimum of $550 per month is guaranteed, at least if the commission account has sufficient funds therein for such purpose.

During the 25 months in which the plaintiff was employed, for the first 6 months thereof he received the guaranteed salary of $500 per month; for 11 months thereof he received the maximum of $850 per month; and for the remaining months his monthly income averaged $660.50 per month. In February 1961 his income was $546.81. This was the only month in which the commissions and basic salary did not total the minimum monthly income of $550 provided for after the first 6 months of employment.

■ The 30-day termination proviso expressed in paragraph 6 of the employment agreement does not appear to have been involved in

the termination of plaintiff's employment here. Rather, it appears that when plaintiff was advised by defendant that because of the strike the plant would be closed for an indefinite period plaintiff elected not to wait further but to procure other employment which he promptly did so as to bring about final termination of the agreement.[2] At that time defendant had performed its part of the agreement and had paid plaintiff exactly as it agreed under paragraph 6 of the contract. The contract having been terminated by mutual consent of the parties, it would seem clear that plaintiff has no further claim on the reserve account which was set up for the express purpose of guaranteeing his minimum and maximum income as above described. In this respect this case is distinguishable from Ickler v. Hilger, 215 Minn. 82, 10 N. W. (2d) 277, where the court held that under the evidence as to the terms of the agreement a fact question was presented as to who was the owner of a reserve account derived from commissions after termination of employment. As indicated above, there is no evidence here which would support a finding that the parties had reached an agreement under which plaintiff was to become the owner of such fund. It would follow that the trial court was correct in ordering judgment for defendant.

Affirmed.

---

[2]See, Neid v. Tassie's Bakery, Inc. 219 Minn. 272, 17 N. W. (2d) 357.