## Case No. 11,854.

### RIPLEY v. RAILWAY PASSENGERS' ASSUR. CO.

[2 Bigelow, Ins. Cas. 738; 1 Leg. Op. 49.]

Circuit Court. W. D. Michigan. 1870.[1]

ACCIDENT INSURANCE — CONSTRUCTION OF CONTRACT—WHAT IS AN ACCIDENT.

[1. While contracts of insurance are subject to the rule that a contract is to be construed most strongly against the promisor, yet, in the absence of anything to show that the terms thereof are intended to be understood in a special sense, the court will go no further than to hold the promisor liable to the extent indicated by the words used, when viewed in their ordinary and commonly received meaning.]

---

[1] [Affirmed in 16 Wall. (83 U. S.) 336.]

[2. Insurance against accident "while travelling by public or private conveyance" does not cover an accident occurring to the assured while journeying on foot along a public road.]

[3. "Accident," as used in an insurance policy, includes any event which takes place without the foresight or expectation of the person acted upon or affected by the event, and hence includes an assault made upon the assured by persons who have waylaid him for purposes of robbery or otherwise.]

At law.

WITHEY, District Judge. The Railway Passengers' Assurance Company, of Hartford, Conn., issued to W. J. Ripley, May 18, 1869, a policy or ticket of insurance, the terms of which are as follows: "The Railway Passengers' Assurance Company, of Hartford, Connecticut, will indemnify the insured by this ticket, in the sum of twenty-five dollars per week, against loss of time, not exceeding twenty-six consecutive weeks, while totally disabled and prevented from all kinds of business, by reason of bodily injuries, effected from violent and accidental means, or will pay the sum of five thousand dollars to his legal representatives, in the event of his death, by means aforesaid, when resulting within ninety days from the happening of the accident, provided that this insurance shall be payable, only in the event of death or disability of the assured, when caused by any accident while travelling by public or private conveyance in the United States or Dominion of Canada."

The ticket was issued at Grand Haven, Ottawa county, Mich., to Ripley, who at once set out for his home at Dalton, in Muskegon county, taking conveyance by steamer from Grand Haven to Muskegon village, where he arrived at eleven o'clock at night. From thence he proceeded on foot towards Dalton, a distance of some eight miles. When about half the distance, and at about half past twelve o'clock of the morning of the ninth, he was met on a highway by two men, who set upon and waylaid him. He was rendered insensible, robbed of a watch and small sum of money, but revived, and succeeded in reaching his home at about two and a half o'clock of the same morning. He died from the effects of the injuries thus received, on the sixth day, namely, on the 15th day of May.

There are two questions to be determined by the court, the case having been tried by stipulation without a jury, namely: Was Ripley travelling by private conveyance? and were the injuries which he received, and from which he died, effected by violent and accidental means? There was, at the time when Ripley started on foot from the village of Muskegon, no public conveyance by which he could go to Dalton. But he could have procured a team to take him home. Ripley was accustomed to travel on foot between the two points, except when he chanced to get a ride in some passing conveyance. The plaintiff's counsel contends that policies of insurance are construed liberally in favor of the insured party, and strongly against the insurers; that, in one sense, travelling on foot is travelling by private conveyance, and that this contract of insurance should be held to cover any mode of conveyance which accomplishes the transit of the person; that the term "private-conveyance," used as a compound word, has no precise or definite meaning, while the word "private" pertains to persons, and the word "conveyance" to any means by which persons and things are transported. Hence, self-locomotion is strictly private conveyance. And, finally, that the terms of the policy are "travelling by," not "travelling in," private or public conveyance.

In reference to the second question, the plaintiff contends that the injuries received by the deceased were effected by violent and accidental means, inasmuch as there was force without the agency or design of the injured party. The violence received was not intended by him,—was not foreseen,—and therefore was accidental. It is as though two men had thrown a train of cars off the track, and Ripley had been killed. As to Ripley, it would be an accident, though the perpetrators had designed to do it. On the other hand, the defendant's counsel contends, first, that contracts of insurance are to be construed, like any other contracts, according to the ordinary sense and meanings of the terms employed, unless where the terms are used in a special sense. The terms "private or public conveyance" have no meaning in this policy, except the ordinary import of the words. They import travelling by some vehicle or instrument of conveyance other than the legs of a man walking and carrying his own body, as by car, vessel, stage, or by one's own or another's team. If a man is carried on another man's back, while possibly it would be held to be travelling by private conveyance, yet counsel for the defendant contends that it would be a forced and unnatural construction to say that a man who travels on foot is travelling by private conveyance; and, secondly, he contends that, by the terms of the ticket of insurance, the injury must have been effected by violent and accidental means. If the violence is intentional, it is not accidental. The men who set upon and waylaid Ripley intended violence, which violence resulted in murder, and murder is not an accident. Drowning, when not the result of design, is an accident; while sunstroke has been held not to be an accident, but a result of natural causes. Sinclair v. Maritime Pass. Assur. Co., 3 El. & El. 478, cited by counsel. He also contends that a man travelling in a railroad car, though set upon and murdered, does not die of accident. This is a violence, but not

an accident. A man thus travelling cuts his own throat, and dies; this is no accident. Whereas, if he casually cuts himself while taking his lunch, and dies of the wound, it is accident, but there is no violence. "Violent and accidental" are terms synonymous with "accidental violence." Fitton v. Accidental Death Ins. Co., 17 C. B. (N. S.) 122; Id., 34 Conn. 574; Southard v. Railway Pass. Assur. Co. [Case No. 13,182],—cited by counsel.

Such are substantially the views argued by counsel. The policy, or ticket of insurance, issued to Ripley, is not a general accident policy. It is confined to injuries effected by violent and accidental means, while travelling by private or public conveyance. It is to be construed, like other contracts, according to the sense in which the parties are supposed to have understood it at the time it was entered into, and they will be presumed to have understood its terms in the sense that men of ordinary intelligence ought to have understood it. This is arrived at by giving to the terms used their most comprehensive, popular meaning. It is a rule, applicable to insurance and other contracts, that they are to be construed most strongly against the party making the promise. But the rule does not go so far as to authorize a construction against the promisor, merely because that view is possible. On the contrary, in the absence of anything to show that the terms of such contract are intended to be understood in a particular or special sense, courts will go no farther than to hold the promisor liable to the extent which the other party had a right to understand from the terms of the instrument, when viewed in their ordinary and commonly received acceptation. The question is not, how did Ripley understand the company's promises? but how ought he to have understood them? And so, as to the company, how ought it to have understood its undertakings expressed in this policy? If the language of the contract shall thus be interpreted, in legal acceptation, we shall have made it speak the true intent of the parties. The rules I have laid down are not in the exact language of the books, but are nevertheless drawn from text writers and decisions of the courts, on the subject of the construction of contracts, and are believed to be substantially correct. Now, when the term private conveyance is used, as in this policy, to indicate a mode of travelling, its ordinary popular acceptation means a vehicle or instrument of conveyance other and different from the person or thing to be conveyed. It will not answer any just rule of construction to hold, but in one sense it is possible to say that a man walking on foot is a private conveyance for himself, and therefore such must be its interpretation. The ordinary import of the language, and not the possible import, must control.

My opinion is therefore wholly with the defendant on this question, and defeats a recovery by the plaintiffs.

If the case was to turn upon the other question, namely, whether the injuries received by Ripley were effected by any violent and accidental means, I should apply the same general rule of construction, and hold the company liable, in accordance with what I regard as embraced within the meaning of the words, "any accidental means," taking them in their most comprehensive, popular acceptation. The injuries were effected by violence, but was there any accident? Mr. Webster defines "accident" to be an event that takes place without one's foresight or expectation,—an event which proceeds from unknown cause, or an unusual effect of a known cause, and therefore not expected; chance, casualty, contingency, unexpectedly happening by chance, unexpectedly taking place, not according to the usual course of things. Perhaps, in a strict sense, any event which is brought about by design of any person is not an accident, because that which has accomplished the intention and design, and is expected, is a foreseen and foreknown result, and therefore not strictly accident. Yet I am persuaded this contract should not be interpreted so as thus to limit its meaning, for the event took place unexpectedly, and without design on Ripley's part. It was to him a casualty, and in the more popular and common acceptation of the word, "accident," if not in its precise meaning, includes any event which takes place without the foresight or expectation of the person acted upon or affected by the event. A man goes to a livery for a horse and carriage, and is given one. But the horse is sure to run away if he is driven. This the livery man knows; the hirer does not. The horse is taken, driven, and runs away, injuring the hirer. Now, the event was foreseen and expected by the owner of the horse, but unforeseen and unexpected by the hirer, and, therefore, it seems to me it was accidental to him, and, within view of this policy, would be regarded an accident. A man throws a train of cars off the track, and one or more passengers are injured or killed. To those in the car it is an accident,—a casualty,—while in the exact sense murder is not an accident. I think in construing a policy of insurance against accident, issued to all sorts of people, a majority of whom do not, as the company well know, nicely weigh the meaning of words and terms used in it, courts are called upon to interpret the contract as a large class not versed in lexicology are sure to regard its terms and scope. That which occurs to them unexpectedly is by them called "accident." The company fix the terms of this contract, and are to be held, in the absence of plain and unequivocal exceptions and provisos, to intend what, in popular acceptation, the in-

sured party is likely to understand by its terms. This question is not, perhaps, entirely free from doubt. I find no case in which the exact point has been decided; but it does not become as material in this case as though the rights of the parties turned upon it. The conclusion at which I have arrived on the other question defeats the right of the plaintiffs to recover, and judgment is accordingly given for the defendant.

[Affirmed by the supreme court, 16 Wall. (83 U. S.) 336.]