## MAZIE M. RUDD v. GREAT EASTERN CASUALTY & INDEMNITY COMPANY.[1]

June 9, 1911.

Nos. 17,089—(153).

**Accident insurance policy — platform at railway station — public highway.**
A platform at a railway depot, used by the public for the purpose of going to and from trains, and which is used by the public without objection for the purpose of traveling from one street to another street, and to other parts of the depot grounds, is a "public highway," within the meaning of an accident insurance policy which contained the provision: "While walking on a public highway, by being injured by actual contact with a bicycle or any moving conveyance or vehicle propelled by steam, electricity, cable, horse power, gasolene, or compressed air."

Action in the district court for St. Louis county to recover $1,000 upon a life insurance policy. The answer set out the conditions of the policy and denied any knowledge as to whether on April 26, 1910, the insured was injured by a railway train, which injury was the immediate cause of his death, and death was the direct re-

[1] Reported in 131 N. W. 633.

sult of such accident, and that the injuries and death were caused by external, violent and accidental means. The answer specifically alleged that, at the time the insured received the injury, from the effects of which he died, it was not while he was walking upon a public highway. The reply was a general denial. The case was tried before Dibell, J., who directed a verdict in favor of defendant. From an order granting plaintiff's motion for a new trial, defendant appealed. Affirmed.

*Larrabee & Davies,* for appellant.

*A. C. Gillette,* for respondent.

LEWIS, J.

The Missabe & Northern Railway depot in the city of Virginia faces north on Chestnut street, and is about eighty feet in length and forty feet in width. It is surrounded by a platform twelve feet wide on the north, west, and south sides, and fifteen feet wide on the east side, where it extends to the south for a distance of about one hundred eighty feet from the east end of the depot. The main track of the railway runs on the east side of this long platform, and the westerly rail is about three feet distant from it. The freight depot is located about one hundred seventy feet south of the passenger depot. Maple street commences at the right of way just north of the freight house, and runs to the west. Another street runs north and south from Chestnut to Maple streets, and parallel to the right of way. A spur or switch track is located on the right of way just west of the depots.

The use of these grounds by the public was stated by the trial court as follows: "The public, foot travelers and those using vehicles, make use of the street to the west of the right of way, and the right of way, indifferently, in going to and from the passenger and freight depot, and in passing from Maple street up to Chestnut, and thence east or west, and in passing from Chestnut down to Maple and to the west. Foot travelers use the platform, and the path to the south, along the tracks. So far as its actual use is concerned, the platform and right of way and the street, so far as they are capable of use for travel, are one street or highway."

114 M.—33.

Plaintiff's husband was insured in defendant company under a policy of accident insurance. At about 9:35 p. m., April 26, 1909, the regular train came in, consisting of a baggage car, a smoker, a coach, and a sleeper in the order named, and stopped next to the platform on the main track, with the engine near the middle of Chestnut street. Mr. Rudd, who lived at Virginia, accompanied some friends who were taking passage on the train, and went with them to the train and into the smoker. As soon as the train started to back out, he went out of the south door of the car, and that was the last seen of him alive. About half an hour after the train had left his mangled body was found on the main track, about fifty feet south from the south end of the platform, and blood was found on the track within one hundred feet of the south end of the depot. The only blood discovered on the train was on the heel of the engine pilot. There was evidence to warrant the conclusion that the north end of the smoker stood about opposite the south end of the passenger depot when the train started.

At the close of the evidence the trial court directed a verdict for the defendant, but subsequently granted plaintiff's motion for a new trial. Appellant concedes that the sole question on this appeal is whether Rudd, when he fell under the train, was on a public highway, within the terms of the policy.

The pertinent provisions of the policy necessary to consider are as follows: "While walking on a public highway, by being injured by actual contact with a bicycle or any moving conveyance or vehicle propelled by steam, electricity, cable, horse power, gasolene, or compressed air." Another provision was that the insurance did not cover suicide or injuries, fatal or otherwise, sustained while on the roadbed or bridge of any railroad, except while crossing such roadbed at its intersection with a legally dedicated public highway. It is clear from this language that plaintiff cannot recover if Rudd fell or was caught by the train while getting off the train. But if he had reached the platform, and then slipped or came in contact with the train, and was thrown and drawn under, then the question arises whether the accident occurred in a public highway, as that term in the policy was intended to be understood.

The location of the blood on the track and on the engine, and the speed of the train when Rudd left the car, show that he had not passed the platform when he stepped off the car.   The position of his body when found and the location of the blood indicate that he left the car on the platform side.   He may have fallen while attempting to alight.   He may have reached the platform, and while on his way to the depot slipped or fell between the train and the platform.   The latter inference is aided by the fact that the engine contained the only blood on the train.   And he may not have fallen until the engine had passed him, which would require some time.   There were no lights on the platform on the south side of the depot, and it was fairly a question for the jury to determine whether such was the manner in which he met his death.

The platform was not a part of the roadbed or a bridge, as defined in the policy.   It was not a legally laid out or dedicated public highway, but it was a public highway in a limited sense.   It was open to the public, not for general use, but for the use of those having business transactions with the company, or having occasion to pass that way.   One going to a station to mail a letter is not a trespasser.   Hale v. Grand Trunk, 60 Vt. 605, 15 Atl. 300, 1 L.R.A. 187.   A person is not a trespasser who goes upon depot grounds for the purpose of holding a business consultation with another who was expected to be there to take a train.   Klugherz v. Chicago, M. & St. P. Ry. Co., 90 Minn. 17, 95 N. W. 586, 101 Am. St. 384.   Those who go to depots to meet passengers are not trespassers.   McKone v. Michigan, 51 Mich. 601, 17 N. W. 74, 47 Am. Rep. 596.   Besides, the public had acquired the privilege of using the platform as a short-cut way to another street.

The term employed in the policy is very general.   It is not expressly limited to legally laid out or dedicated public highways, which are open to the general public without any restrictions.   It may reasonably refer to any walk or way where the public are accustomed to travel for certain purposes.   When there is any fair doubt as to the meaning of terms used in such contracts, they must be construed most strongly against the party selecting the language.

Cook v. Modern Brotherhood of America, 113 Minn. 299, 131 N. W. 334.

We concur with the trial court that the platform was a highway within the meaning of the policy, and that the evidence was' sufficient to warrant a jury in finding that the deceased came to his death by falling from the platform. Anthony v. Mercantile, 162 Mass. 354, 38 N. E. 973, 26 L.R.A. 406, 44 Am. St. 367.

Affirmed.