## GATEWOOD v. CONTINENTAL GENERAL LIFE INS. CO. OF HARTFORD, CONN.

District Court, E. D. Virginia. December 10, 1927.

**1. Words and phrases—"Highway" is generic term embracing all kinds of public ways including railroads.**

"Highway" is a generic term embracing all kinds of public ways and also including railroads.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Highway.]

**2. Words and phrases—"Public highway," as ordinarily used, includes every way for travel which public has right to use conditionally or unconditionally.**

The term "public highway" is broad enough in its ordinary acceptation to include every way for travel by persons on foot or with vehicles which the public has the right to use either conditionally or unconditionally.

**3. Insurance ⟾146(2)—Public highway in accident policy is to be understood in its general sense.**

The term "public highway," as used in a policy of accident insurance should be regarded as intended to be understood in its general sense and according to its ordinary acceptation, having in view the object sought to be attained.

**4. Insurance ⟾527—Open ground of railroad company behind station, used by public generally held "public highway" within accident policy.**

Open ground of a railroad company behind a station, abutting on a county road and used for driving to the station and shipping yards and by the public generally for parking and turning automobiles, held a "public highway," within the meaning of the term as used in an accident policy provision for triple indemnity if struck by conveyance while walking in or across public highway.

**5. Insurance ⟾527—"Conveyance," within insurance policy, means vehicle or instrument other than legs of man.**

A "conveyance" as used in such policy means some vehicle or instrument other than the legs of a man walking and carrying his own body.

**6. Insurance ⟾527—Death of insured from kick of saddle horse held from being struck by "conveyance" within accident policy.**

A saddle horse from which the rider had temporarily dismounted, and which kicked insured while walking on a public highway, causing his death, held a "conveyance," within such policy.

At Law. Action by Grace T. Gatewood against the Continental General Life Insurance Company of Hartford, Conn. Trial to court, and judgment for plaintiff.

Jno. S. Barbour, of Fairfax, Va., for plaintiff.

Gardner L. Booth, of Alexandria, Va., for defendant.

GRONER, District Judge. This is an action to recover on a policy of insurance and was originally begun in the circuit court of Fauquier county and removed therefrom to this court. The parties have stipulated certain facts and others shown in the evidence are not disputed. A jury was waived.

Eugene C. Gatewood, husband of the plaintiff, was the holder of a policy of insurance issued by the defendant company commonly known as an accident policy. The provisions of the policy provided payment in the sum of $5,000 in the event of loss of life, limb, or sight, and "triple indemnity" if sustained by insured "by being struck or run down by a conveyance while walking on or across any public highway." The company promptly admitted liability for the amount of the principal indemnity, and this was paid and accepted without prejudice to the right of plaintiff as beneficiary to insist upon the applicability of the triple indemnity clause just above quoted. The question therefore for determination here is: (a) Was the injury sustained on a "public highway"? And (b) was insured "struck or run down by a conveyance?"

At the time of the injury insured had gone to the Southern Railway depot at Delaplane, Fauquier county, Virginia, to supervise work then being done at a point on the railroad tracks close to the depot as a result of a train wreck. While he was thus engaged, Mrs. Odey, a neighbor for whom he had undertaken to transport some freight from the depot, desiring to see him in connection with that matter, went to the depot, a short distance away, on horseback accompanied by her son. On arrival there, her son dismounted and secured the services of a colored boy to hold the horse while he went around the station platform to the point of the wreck. Insured, being apprised of Mrs. Odey's desire to see him, came to the roadway at the rear of the depot building where she remained mounted, and while talking to her, the horse being held by the colored boy became frightened by the exhaust from a locomotive, and in attempting to escape kicked insured so severely that a few days thereafter he died.

Six photographs were introduced in evidence showing the place of accident and surrounding physical objects. These show that the railroad depot was located on the south side of the tracks, which at the point in question run nearly east and west. On the north side or front of the depot was the

usual platform, extending at least the entire length of the building and separating it from the tracks. The waiting rooms, ticket office, and baggage room were entered by separate doors from the front platform. The freight department occupied the eastern end of the building, with a large door to the south opening on a freight platform, which was reached from the ground by an inclined way of the same width as the platform. To the south of the station building and freight platform was an open space, about 75 or 80 feet wide, used as a driveway by the public generally for turning and parking automobiles and by the patrons of the railroad company for the delivery and removal by wagons and automobiles of freight from the freight platform, and for hauling logs and timber and driving cattle for shipment on the railroad; the space for logs and timber pending shipment and the delivery platform for the cattle being located at the terminus of this roadway, and some 200 to 300 feet to the eastward of the station.

The county road or highway connecting Delaplane with Markham on the south, after passing over a bridge, runs in an eastwardly direction until it reaches the roadway at the rear of the railroad depot, and there it turns in a northwardly direction between the railroad station on the east and a store building on the west, and thence on across the tracks to Upperville. At the point where they abut there is no natural or artificial barrier separating the county road from the road running behind the station building to the cattle pens and railroad yards, and except that the former is of better construction and shows evidences of more constant usage, the roadway through the railroad property might be regarded as a prolongation or fork of the county road. An official of the railroad company testified that the free use of the road over the company property to the citizens of the community was unquestioned by the railroad. Insured was injured on the railroad property at a point 15 to 20 feet south from the southern side of the depot building and some 25 or 30 feet from the eastern boundary of the county road and in the open space used as a general roadway for all the purposes I have mentioned.

A careful examination by counsel of the decided cases, which I have endeavored to supplement independently, discloses but one case in which the phrase "public highway," as used in an accident insurance policy, has been defined by an appellate court. In the case mentioned (Rudd v. Great Eastern Casualty Co., 114 Minn. 512, 131 N. W. 633, 34

L. R. A. [N. S.] 1205, Ann. Cas. 1912C, 606) the Supreme Court of Minnesota held that a platform at a railway depot used by the public for the purpose of going to and from one city street to another and to other parts of the grounds of the railroad is a "public highway" within the meaning of an accident insurance policy containing the provision "while walking on a public highway," etc. The court said:

"The platform was not a part of the roadbed or a bridge, as defined in the policy. It was not a legally laid out or dedicated public highway, but it was a public highway in a limited sense. It was open to the public, not for general use, but for the use of those having business transactions with the company, or having occasion to pass that way. * * * Besides, the public had acquired the privilege of using the platform as a short-cut way to another street. The term employed in the policy is very general. It is not expressly limited to legally laid out or dedicated public highways, which are open to the general public without any restrictions. It may reasonably refer to any walk or way where the public are accustomed to travel for certain purposes."

[1, 2] That a railroad is a public highway is no longer open to question. Donovan v. Pa. Co., 199 U. S. 279–293, 26 S. Ct. 91, 50 L. Ed. 192. The same is true of the railroad station for it like its other appliances "must be devoted primarily to public use to the extent necessary for the public objects intended to be accomplished by the construction and maintenance of the railroad as a highway." Donovan v. Pa. Co., supra. The word "highway" is a generic term "embracing all kinds of public ways, such as county and township roads, streets, alleys, township and plank-roads, turn pike or gravel roads, tramways, ferries, canals, navigable rivers, including, also, railroads." Strange v. Commissioners, 173 Ind. 640, 652, 91 N. E. 242–247. And the term "public highway" has been held broad enough in its ordinary acceptation to include every way for travel by persons on foot or with vehicles which the public have a right to use either conditionally or unconditionally. Weirich v. State, 140 Wis. 98, 121 N. W. 652, 22 L. R. A. (N. S.) 1221, 17 Ann. Cas. 802.

[3] As used in a policy of accident insurance it should be regarded as being intended to be understood in its general sense and according to its ordinary acceptation having in view the object sought to be attained. This object was to afford protection to the policy holder against injury while using a

place where danger of injury from unintentional contact with vehicles might be anticipated. It was, I think, not intended by insured or insurer to confine its scope to those highways which had been legally laid out and dedicated to the public use. I cannot believe, for instance, that it should be restricted, so as not to be operative in the case of injury sustained by contact with an automobile or carriage, while walking on or crossing a private driveway into a public railroad station. It is a matter of common knowledge that nearly all railroad stations located in the large cities are set back a considerable distance from the public streets with connecting driveways and walkways for public use. As I suggested to counsel in the argument, this is true in Richmond of the Richmond-Washington line. There the waiting rooms are located in a building distant perhaps 200 feet from the public street, but with driveways from the public street to the station building. These driveways are not public highways in tne sense that they have been dedicated to the public. They are located wholly on the property of the railroad company, but they are open to public use and the public have the right to and do use them for the purpose of going to and coming from the depot. In New York, the two great passenger stations, one the Pennsylvania and the other the New York Central, are likewise equipped with driveways from the public thoroughfare which are as much private property as was the space at the rear of the station building at Delaplane, and it would seem to me restricting the true meaning of the policy to say that an injury sustained as provided in the policy at any of these places was not within its terms, because the title was private, though the use was general.

[4] I have therefore reached the conclusion that the injury in this case occurred on a "public highway," within the terms of the policy, and this brings me to the next question, namely: Was the injured struck by a "conveyance"? As I have already set out at some length, injured was struck by a saddle horse, which just a few moments before the injury had conveyed the son of Mrs. Odey from her home to the depot.

[5] A conveyance as defined by the dictionaries is anything which serves as a means or way of carrying something from one place to another, and as used in an insurance policy means some vehicle or instrument other than the legs of a man walking and carrying his own body. Ripley v. Assur. Co., 20 Fed. Cas. 823, No. 11854, affirmed 16 Wall. 336, 21 L. Ed. 469. And so it has been held that

a person insured under a policy providing against injury while traveling by public or private conveyance might not recover for injuries sustained while walking from one place to another. Ripley's Case, supra. The Supreme Court said: "It seems to us that walking would not naturally be presented to the mind as a means of public or private conveyance," and was therefore not in contemplation of the parties to the contract. But it would not, I think, be urged that "it was not in contemplation of the parties" that a person insured against injury by being struck by a "conveyance" was not entitled to recover, if struck by a horse attached to a carriage. And, if this is true, upon what theory may it be contended that a different situation results when the horse is under saddle rather than in harness.

[6] The injury in this case was done by the horse, and the presence of the horse at the place of injury was due to the fact that he had been used to convey a passenger from his home to the depot, and, while it is true the passenger had for the moment dismounted, this would not change the situation, particularly since it was intended that upon his return a few moments later the horse should convey him back from the depot to his home. If, instead of being under saddle, the horse had been in harness, and the driver had left the carriage, and the horse had run away and caused the injury, it would not be urged, because the driver was not in his seat, the liability under the policy was any the less. The purpose of the contract was to provide and secure indemnity from injury while insured was using a designated place where danger might reasonably be expected, and the form of this danger which the parties to the contract had in mind was inclusive, at least to the extent of all swiftly moving objects in modern life, whose use is common to all streets and highways. A motorcycle, in the sense contemplated, is no more a conveyance than is a horse and a bicycle is much less, and yet in either case, the policy would, I think, undoubtedly have covered injury sustained by contact with either, and so in my opinion was the injury sustained here, and this being so, I think judgment should pass in favor of the plaintiff for the full amount sued for, with costs and interest from date, and the clerk will enter judgment accordingly.

The record will show that the defendant seasonably excepted to the conclusions of the court and moved the court to set aside the judgment and grant a new trial, and excepted to the refusal of the court so to do, and

60 days will be allowed the defendant in which to present its bills of exceptions in the respects mentioned, as well as its bill of exceptions to the refusal of the court to enter judgment for the defendant.