STANDARD LIFE INSURANCE COMPANY, Defendant-
Petitioner,

*v.*

RACHEL S. HUGHES, Complainant-Respondent.

(*Knoxville,* September Term, 1957.)

Opinion filed June 6, 1958.

SIMMONDS, BOWMAN & HERNDON, Johnson City, for petitioner.

PRICE & PRICE, Johnson City, for respondent.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

This suit was filed in the Chancery Court of Carter County by Mrs. Rachel S. Hughes to recover the face value of a limited accidence insurance policy issued by the defendant company upon the life of complainant's deceased husband, who was killed in an automobile accident in said county on Sunday morning, October 30, 1955.

The chancellor entered a decree for $1,000 in favor of complainant, that is, for the face value of the policy, and his decree was affirmed by the Court of Appeals. Both

courts have held that his death occurred "on a public highway" *within the meaning of said policy* and, therefore, it is suggested by counsel for Mrs. Hughes that if there is any evidence to support this concurrent finding, the same is not open for review in this Court. The facts are not in dispute, however, and the question is one of law.

The first assignment of error is that the Court of Appeals erred in concluding that the accident occurred on a public highway, as defined in the policy of insurance, because it is contrary to the undisputed evidence, the law and the clear and unambiguous provisions of the policy. The second assignment is that the court erred in construing the contract more strongly against the insurer.

The material facts are as follows: On the morning of the fatal accident the insured left his home in the Pinecrest Addition and drove into Johnson City, where he attended Sunday School. Afterwards he drove to Elizabethton, picked up his mother in law, brother in law and the latter's wife to take them to his home for Sunday dinner. After the party left Elizabethton and had passed Milligan College on the old Elizabethton-Johnson City highway, they were traveling on a practically straight stretch of road at a speed estimated from 20 to 25 miles per hour, when deceased for some unknown reason drove his car across the center line of and off the road onto a gravelled area used by the customers who desired to make purchases at either Usary's Grocery store or his filling station, or both; likewise, any members of the public generally who desired to park there or use it for a turn-around spot were permitted to do so without ob-

jection; the area ran back from the highway about 100 feet, but there was no through passage from any one alley, lane or street to another. The grocery store sat at an angle to the line of the highway with the nearest corner being about 12 feet from the boundary separating the road right of way from Usary's property, and 16 to 18 feet from the edge of the paved part of the highway. The entrance to the grocery was around the corner of this end of the building and was about 60 feet away from the line of the highway. The filling station was not connected with the grocery building and was at the other end of the lot and both businesses were located wholly on Usary's property.

As deceased left the highway he did not reduce his speed but drove across the gravelled area that separated the end of the grocery building from the highway, going to the left of a utility pole which was between the highway and the corner of the building, and struck the rear corner of the building with such force that the impact threw him violently across the steering wheel, which struck him in the chest. After the accident, he was found slumped in the seat bleeding from a cut in the forehead and he died about 20 minutes thereafter.

There is no evidence of any formal dedication of Usary's property to public use; nor of any evidence that the public authorities had ever expended any work, labor or materials on same; nor is there any evidence of a dedication by implication from any adverse claims of the public of the right to use said property; nor any evidence of long continued use by the public. The record is simply silent as to anything other than the fact that Usary has these two businesses and provides parking

space to his customers and does not object to anybody driving in or out.

This property of Usary is in the nature of a *cul-de-sac,* that is, it affords entrance to his two businesses alone and not to anybody's else property contiguous to his. There is nothing in the evidence to show that he would not have the right to change the arrangement of the improvements on his property at any time and to prohibit entirely any member of the public from coming on his property except those coming there for the purpose of trading with him. In short, those who come as customers or prospective customers are invitees and those of the public generally who simply use it for a turnaround are at best mere licensees.

The coverage of the policy after providing for coverage if the insured is struck while walking or standing on a *public highway,* or be struck by any vehicle named above while riding a bicycle on a *public highway,* it then provides as follows: "which term, Public Highway, as used in this Policy, shall not be construed to include any portion of railroad or interurban railway yards, station ground or right of way, except where crossed by a public thoroughfare dedicated to and used by the public for automobile or horse vehicle traffic, and shall not include any Public Highway which although dedicated to the public has not in fact been officially opened to the public generally for vehicular traffic."

Another material clause is: "* * * and provided that except as to railroad passenger cars, passenger steamships, street cars and elevators, the collision or accident must occur on a public highway as heretofore defined."

After a careful study of the opinion of the chancellor and of the Court of Appeals, for all of whom and whose ability we have the highest respect, we are constrained to reach a conclusion opposite to that reached by those two courts, as will appear from the following reasons.

The opinion of the Court of Appeals impliedly assumes that the phrase "public highway" is ambiguous and, therefore, requires construction and hence, under well established rules under such circumstances, the contract must be construed more strongly against the insurer who prepared the contract. That court cited as authority *Hahn v. Home Life Ins. Co.*, 169 Tenn. 232, 84 S.W.2d 361. On page 237 of 169 Tenn., on page 362 of 84 S.W. 2d, however, is a quotation from the United States Supreme Court which states the rule fully as follows:

"When an insurance contract is so drawn as to be ambiguous, or to require interpretation, or to be fairly susceptible of two different constructions, so that reasonably intelligent men, on reading the contract, would honestly differ as to the meaning thereof, that construction will be adopted which is most favorable to the insured.

"But the rule is equally well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and, if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense."

Again, on the same page is a quotation from *Pacific Mutual Life Ins. Co. v. Hobbs,* 168 Tenn. 690, 80 S.W.2d 662, as follows:

"Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, in their plain and ordinary sense."

Also with reference to the rule of strict construction against the insurer, in *Davis v. Combined Ins. Co. of America*, 137 W.Va. 196, 70 S.E.2d 814, 821, it was said:

"This salutary principle, however, does not apply when the language of the policy of insurance is unequivocal and unambiguous and is sufficiently clear in expressing the intention of the parties, or when the language has acquired by judicial construction on a clear and definite meaning." (Citing authority.)

We are of opinion that there is no ambiguity about the ordinary meaning of the expression "public highway." We think there can be no doubt that the common understanding of a public highway is such a passageway as any and all members of the public have an absolute right to use as distinguished from a permissive privilege of using same.

In *Sumner County v. Interurban Transp. Co.*, 141 Tenn. 493, 498, 213 S.W. 412, 413, 5 A.L.R. 765, is this definition:

"A public road is a way open to all the people, without distinction, for passage and repassage at their pleasure. Definitions in other terms have been given, but they mean substantially the same as the one just stated. The authorities make it clear that any road which is not for the use of the people is not a public road; the fact that it is for the benefit of the public destroys the thought that there can be a private ownership of the road."

The same definition appears in 39 C.J.S. Highways secs. 1, 1b, pp. 913, 915.

Unless a passageway has been created a public way in some manner known to the law, such as by act of the public authorities, or the express dedication by the owner, or an implied dedication by means of the use by the public and acceptance by them with the intention of the owner that the use become public, or by adverse user for a period of 20 years continuously creating a prescriptive right, it is not a public way.

The opinion of the Court of Appeals states: "as will be observed, the policy excludes liability where accidents occur at specific places enumerated therein, but makes no reference whatsoever to accidents or collisions occurring on parking lots, driveways used by the public, parking lots used for supermarkets, entrances to drive-in theaters, motels, filling stations, hot dog stands, etc., and other places openly and freely used by the public generally."

There are two answers to the foregoing statement. The first is that unless those various ways above described are such that the public has acquired an absolute right to the use of same, as above described, then all such use by the public is either by permission or license and not by right. This is illustrated by the decision in *Cerria v. Union News Co.*, 31 N.J. Super. 369, 106 A.2d 745. That was a workmen's compensation case wherein it was held that the claimant, who was an employe at a newsstand in a railroad station, and who had fallen while descending a stairway on the railroad premises from the public street to the station floor, had sustained an accident arising out of and during the course of her work, where the

railroad was her employer's lessor, although the stairway was perhaps used generally by the public. On page 746 of 106 A.2d, the opinion states:

"However, appellant was not on a public way at the time. The station and the stairways from the public street are the private property of the railway. They are provided for the use of intending passengers and, by necessary implication, as a means of ingress and egress to the Union News Company's place of business by patrons and employees. Any one using them for a purpose not connected with a business properly carried on there would be a trespasser or at best a licensee."

The second reason is well stated in *Murphey v. Inter-Ocean Casualty Co.*, 98 Ind.App. 668, 186 N.E. 902, 903, wherein it is said:

"Under the insuring clause of the policy involved here, applellee becomes liable if, and only if, the insured be 'struck or knocked down or run over while walking or standing on a public highway'. The language employed in stating the coverage is plain and not ambiguous. It limits the right of recovery, and also excludes from this limited coverage injuries sustained while working on a public highway or a railroad right of way, or while on a railroad right of way in violation of law. *Generally speaking, an exclusion clause cannot be used to create liability where none would otherwise exist.* While we recognize and adhere to the rule that insurance contracts which are reasonably subject to conflicting interpretations are strictly construed against the insurer, yet, the construction should be a fair and reasonable one, and such

as will be in accord with the language used in the contract itself. *It does not seem reasonable that the parties to the contract intended or understood that, by the exclusion of injuries sustained under certain conditions, liability should be incurred if the insured was injured or killed while at a place where the insuring clause did not cover him."*

■ It is pertinent to observe also that the rule of ambiguity and construction against the insurer does not permit a court to create an ambiguity where none exists. *Brown v. Tennessee Auto Ins. Co.,* 192 Tenn. 60, 237 S.W.2d 553.

■ Also, a court should not emasculate a contract but should seek to arrive at the real intention of the parties in the light of the language used and in view of the subject matter and the circumstances of the execution of the contract. *Robinson v. Tate,* 34 Tenn.App. 215, 227, 236 S.W.2d 445.

The Court of Appeals and the chancellor based their respective opinions on two cases. The first one: *Rudd v. Great Eastern Casualty & Indemnity Co.,* 1911, 114 Minn. 512, 131 N.W. 633, it was held that a platform at a railway station, used by the public going to and from trains, and used by the public without objection in travelling from one street to another into other parts of the depot grounds, was a public highway within an accident policy, although it was not a legally laid out or dedicated public highway but was a public highway in a limited sense.

The other case is *Gatewood v. Continental General Life Ins. Co. of Hartford, Conn.,* D.C., 23 F.2d 211. The Court, following the Rudd case, held that an open space

about 80 feet between the rear of the railroad station and the county road, where the insured was injured, was a public highway within the language of an accident policy. The opinion stated that the area might be regarded as a prolongation or fork of the county road and that it was used by the public generally for business with the railroad as well as parking or turning around of vehicles.

Another case which purports to follow the Rudd case but in fact is quite materially different, is *Asevedo v. First Nat. Life Ins. Co.*, La.App., 39 So.2d 613, in which the syllabus reads as follows:

"A policy insuring against death of insured when struck by a vehicle on 'public highway' covered insured who was struck by automobile while very close to concrete portion of state highway and while either on part of shoulder maintained by highway department or while within a few feet of that shoulder and on an indistinguishable part of adjacent portion paved with shells."

Then in petition to rehear reported in La.App., 40 So. 2d 408, the Court said last sentence:

"The point at which Asevedo was struck was certainly to a limited extent a part of the public highway."

The opinion did state that it adopted the statement in the Rudd case that it need not be a legally laid out or dedicated highway.

The case of *National Casualty Co. v. Zmijewski*, 143 Fla. 285, 196 So. 587, allowed a recovery under a similar

policy but on principle is really in accord with what we have hereinabove held. There the insured was struck by an automobile when standing in a filling station driveway on or near a line dividing the public highway from the private property used as a filling station and at a place on private property not exceeding 2 feet from the dividing line and it appeared that for several years motorists had used the driveway as a short cut between two avenues. The Court found that the location was a public highway for two reasons: first, that the evidence justified a finding that the insured was actually on the highway, because a witness testified that he could have been either 3 inches on either side of the line between the road and the filling station property. Second, that the public has established a right by adverse user for 10 to 15 years and it appeared that this right of the general public to use it as a highway is not disputed in the evidence. The opinion cited *Couture v. County of Dade,* 93 Fla. 342, 112 So. 75, which lays down the methods by which the public acquires the *right* to pass over the property and thus establish a highway.

The case of *Rodgers v. Commercial Casualty Ins. Co.,* 237 Ala. 301, 186 So. 684, leaves the very clear inference that the rule in Alabama is that to be a public highway it must be such a one as the public has a right to use rather than a mere privilege, although the decision was not on that point.

It is our view that the place where the insured met with this fatal accident was not on a public highway as stated in the policy contract but was on the private property of Usary and hence the accident is not covered by the policy contract.

To hold otherwise would seem to us to be injecting into the law a doctrine of far reaching and unforeseeable consequences and in violation of established principles in this day of off-street parking requirements for business places as well as churches. Such a doctrine if carried to its logical conclusion could just as well include the interior of a store as well as the exterior parking and driveway facilities. It is suggested that it would come as a distinct surprise to any citizen to be told that the parking area around a supermarket or filling station is a public highway.

Reverse the judgment below and dismiss the bill with the costs to complainant.