300 So.2d 782 (1974)
SOUTHERN LIFE & HEALTH INSURANCE COMPANY
v.
Olivia KEMP.
No. 47722.
Supreme Court of Mississippi.
September 30, 1974.
White & Morse, Richard P. Salloum, Gulfport, for appellant.
Rushing & Guice, William Lee Guice, III, Biloxi, for appellee.
SMITH, Justice:
This is an appeal by Southern Life and Health Insurance Company from a judgment of the Circuit Court of Harrison County, entered against it in a suit by Olivia Kemp, as named beneficiary in a "travel accident policy" issued by that company, insuring her late husband against accidental death occurring under certain circumstances specified in the policy.
*783 The policy sued upon insured against accidental death, but only if such death occurred under circumstances enumerated in the policy, and was issued in consideration of the payment of a weekly premium of twenty-five cents.
On its face, the policy stated, in capital letters, that it was a "Non-Participating Travel Accident Policy."
The insured was Cornelius Kemp, a taxi driver, husband of appellee. At about 9:00 in the evening of February 16, 1972, Kemp's taxicab was found parked in the parking lot of Howard Memorial Hospital, a private Mississippi corporation. On the floor, in the back seat compartment, Kemp's body was discovered by a hospital guard or watchman. About Kemp's neck there was a cord by means of which Kemp had been garroted, and his shoes and empty billfold were found in the front portion of the taxi. His cap was later found in another part of the lot. Murder in the course of robbery was indicated.
The insuring agreement in Paragraph 1 of the policy provides for payment of death benefits when death occurs from a "travel accident injury" as defined in the policy. Paragraph 3 is headed, in capital lettering, "Meaning of Travel Accident Injury," and is as follows:
3 MEANING OF TRAVEL ACCIDENT INJURY  Death or losses for which payment will be made must result from bodily injuries which are effected directly and independently of all other causes through violent, external and accidental means which are evidenced by a visible contusion or wound on the exterior of the body (except in the case of internal injuries revealed by autopsy) and which are sustained (1) while driving or riding on a public highway in an automobile, bus or truck; (2) as a result of being struck by a motor vehicle while walking or standing on a public highway; or (3) while riding as a passenger in or upon a public conveyance provided by a common carrier for passenger service.
It is appellee's contention that Kemp's death occurred within the meaning of the first contingency specified under Paragraph 3, that is, while he was "driving or riding on a public highway" and is covered by the policy.
There were no witnesses to the homicide, and Kemp had not been seen, so far as the record shows, by anyone, other than his murderer, for some two hours before his body was found.
It appears without dispute that the parking lot on which Kemp's taxi was parked was the private parking lot of Howard Memorial Hospital. Special reserved spaces were set aside for doctors practicing in the hospital. There were other spaces for the parking of cars by friends and relatives of patients who might visit the hospital. There is also some evidence that members of the public would park on the lot and that, from time to time, private vehicles would cut across the lot as a shortcut from one street to another. It was not shown, nor is it seriously contended, that there existed any public right to the use of the lot. Those members of the public who used it for parking or for "cutting across" were, although not trespassers, no more than invitees or licensees, whose use of the lot was permissive and subject to the right of the hospital to terminate it at will, if it should see fit to do so. The lot was privately maintained, policed and controlled by the hospital and there was no public maintenance or regulation of it. It did not qualify as a public road, street or highway under any recognized definition.
(1) It had been neither used continuously nor maintained by public authorities as a public way for a prescriptive period of ten years or longer.
(2) It had never been formally dedicated as a public way by the owner by formal plat or map or otherwise.
*784 (3) It had not been created, established or laid out as a public road or highway according to law by any public authority. Saxon v. Harvey, 190 So.2d 901 (Miss. 1966); Brooks v. Sanders, 243 Miss. 46, 137 So.2d 174 (1962); Coleman v. Shipp, 223 Miss. 516, 78 So.2d 778 (1955); Armstrong v. Itawamba County, 195 Miss. 802, 16 So.2d 752 (1944); Gulf & Ship Island Railroad Co. v. Adkinson, 117 Miss. 118, 77 So. 954 (1918).
Mississippi Code Ann. section 63-3-125 (1972) contains the following definitions:
(a) "Street or highway" means the entire width between property lines of every way or place of whatever nature when any part thereof is open to the use of the public, as a matter of right, for purposes of vehicular traffic. (Emphasis added).
......
(e) "Private road or driveway" means every way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner but not by other persons.
A similar statute in Minnesota was dealt with in Merritt v. Stuve, 215 Minn. 44, 9 N.W.2d 329 (1943), where a penitentiary driveway was involved.
The Minnesota court said in Merritt:
It seems agreed that the test to be used in determining whether a given roadway is public or private does not turn upon the amount of travel or use made thereof, but rather upon the right of the public generally to use the way for vehicular traffic... .
In the instant case, however, it cannot be questioned that the prison authorities could limit the use of the driveway in question to employees of the institution, thereby barring the public generally; or, further, could in isolated instances permit its use by particular individuals, depending upon the facts and circumstances of each case; or that it could, in fact, close the driveway to all traffic of whatever kind. It is obvious, therefore, that the driveway is not one that the public "as a matter of right" has the use of for purposes of vehicular traffic, and that it does not fall within the definition of "street or highway" as designated in § 169.01, subd. 29, supra.
In Merritt, the Minnesota Court cited State v. Root, 54 Ohio App. 412, 414, 7 N.E.2d 664, 665, and quoted the Ohio Court as follows:
The simple question presented is, therefore: Is the driveway into Longview Hospital a public road or highway? The evidence shows that the driveway is open to the public at least to the extent of those having business with the institution. There would probably be no objection to the public using the driveway in motor vehicles, although merely prompted by a desire to inspect the buildings and grounds. It is obvious, however, that there must be a manifest difference between this driveway and any ordinary street or highway over which the public is permitted to travel without any restrictions except those necessarily imposed for the safety of fellow travelers.
The driveway is an appurtenance of the institution, directly connected therewith, and established and maintained solely for the convenience of those who in some manner seek to reach or leave the institution. It runs through state owned property, it is true, but this of itself cannot constitute it a public highway, simply because it may be used by the public. It is subject to almost unlimited regulation by those having charge of the institution and could be entirely closed to vehicular traffic if those in charge of the institution saw fit to so ordain.
The Tennessee Supreme Court has had occasion to consider a question analogous to that now presented. Standard Life Insurance Company v. Hughes, 203 Tenn. *785 636, 315 S.W.2d 239 (1958), involved a suit to recover the death benefit provided by what the court described as a "limited accidental insurance policy" which had been issued on the life of one Hughes, who had been killed in an automobile accident. The trial court entered judgment for the face amount of the policy in favor of the beneficiary, and this judgment was affirmed by the Tennessee Court of Appeals. The Tennessee Supreme Court, however, reversed, and entered judgment dismissing the suit. From facts stated in the opinion, it appears that the insured, immediately prior to his death, had been driving on a public highway, and was approaching a grocery store and filling station located by the side of the highway. There was a parking lot provided by these two business establishments which ran back from the highway approximately 100 feet. For reasons not disclosed, the automobile of the insured left the highway, crossed the parking lot, and then struck the corner of a building, as a result of which the insured was killed. The Tennessee Supreme Court, in concluding that the parking lot was not a public highway within the meaning of Hughes' policy, said:
There is no evidence of any formal dedication of Usary's property to public use; nor of any evidence that the public authorities had ever expended any work, labor or materials on same; nor is there any evidence of a dedication by implication from any adverse claims of the public of the right to use said property; nor any evidence of long continued use by the public.
......
(315 S.W.2d at 241).
The Court pointed out that coverage under the policy was provided only:
[I]f the insured is struck while walking or standing on a public highway, or be struck by any vehicle named above while riding a bicycle on a public highway, it then provides as follows: "which term, Public Highway, as used in this Policy, shall not be construed to include any portion of railroad or interurban railway yards, station ground or right of way, except where crossed by a public thoroughfare dedicated to and used by the public for automobile or horse vehicle traffic, and shall not include any Public Highway which although dedicated to the public has not in fact been officially opened to the public generally for vehicular traffic."
Another material clause is: "... and provided that except as to railroad passenger cars, passenger steamships, streets cars and elevators, the collision or accident must occur on a public highway as heretofore defined."
(315 S.W.2d at 241).
The Court continued:
We are of opinion that there is no ambiguity about the ordinary meaning of the expression "public highway." We think there can be no doubt that the common understanding of a public highway is such a passageway as any and all members of the public have an absolute right to use as distinguished from a permissive privilege of using same.
(315 S.W.2d at 242).
The burden rested upon the beneficiary to establish by some proof that the death of the insured occurred under circumstances for which the policy provided coverage. Coahoma County Bank & Trust Company v. Feinberg, 241 Miss. 381, 128 So.2d 562 (1961), (citing 20 Am.Jur., Evidence, Section 136, p. 141), Reserve Life Insurance Company, Dallas, Texas v. Watkins, 249 Miss. 748, 163 So.2d 672 (1962).
There is no evidence in the record capable of supporting a finding that Kemp met his death "while driving or riding on a public highway in an automobile, bus or truck." That being the case, it was error for the trial court to refuse appellant's request *786 for an instruction peremptorily directing the jury to return a verdict in its favor. The judgment appealed from must be reversed, therefore, and judgment entered here for appellant.
Reversed and judgment entered here for appellant.
RODGERS, P.J., and ROBERTSON, SUGG and BROOM, JJ., concur.