**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0347n.06

**Nos. 10-5745, 10-6402**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

*Mar 30, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| CHAD YOUTH ENHANCEMENT CENTER, INC., nka Oak Plains Academy, Inc.; UNIVERSAL HEALTH SERVICES, INC., | ) ) ) ) | |
| Plaintiffs-Appellees, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| v. | ) ) | |
| COLONY NATIONAL INSURANCE CO., | ) ) | |
| Defendant-Appellant. | ) | |

Before: MERRITT and COOK, Circuit Judges; COX, District Judge.[*]

COOK, Circuit Judge. In these consolidated appeals, appellant insurer Colony National Insurance Company ("Colony") and appellees insureds Chad Youth Enhancement Center, Inc. ("Chad Youth") and Universal Health Services, Inc. ("UHS"), dispute whether the insureds' policy with Colony covers punitive damages and whether the award of attorney's fees was premature. Regarding a declaratory judgment claim (Case No. 10-5745), the district court found that the policy covered punitive damages, granted summary judgment in favor of the insureds, denied Colony's cross-motion for summary judgment, and denied Colony's motion for reconsideration. For the reasons explained, we reverse the district court's grant of summary judgment, remand for entry of

---

[*]The Honorable Sean F. Cox, United States District Judge for the Eastern District of Michigan, sitting by designation.

summary judgment in favor of Colony, and dismiss as moot its appeal of the motion for reconsideration. In light of this reversal, we also vacate the district court's grant of attorney's fees in the related appeal (Case No. 10-6402).

## I. Background

Chad Youth, a subsidiary of UHS, owns and operates a youth behavioral center in Tennessee. After a resident of that center died as a result of actions by the center staff, his estate brought a wrongful-death action against the insureds, requesting punitive damages. Anticipating a punitive damages award, the insureds sought judgment declaring that its second-layer excess-liability policy with Colony covers the punitive-damages liabilities that may arise out of the wrongful-death lawsuit. The wrongful-death suit settled before a jury could award punitive damages, but this declaratory judgment action remains because the settlement between the insureds and Colony stipulated to payments "attributable to punitive damages," and this appealed coverage-liability dispute will determine who will pay, under the terms of that settlement.

The instant coverage dispute turns on one question: how to reconcile two purportedly contradictory coverage provisions, both of which Colony incorporated into its second-layer excess-liability policy from two separate underlying-insurance policies (General Star Indemnity's primary policy and Axis Surplus Insurance's first-layer excess-liability policy). The following chart summarizes the relevant provisions in the insureds' three insurance policies, with an asterisk marking the two purportedly conflicting provisions:

2

| The Insureds' Policies | Terms |
|---|---|
| Primary Policy<br><br>(General Star Indemnity) | **Coverage Provision\*:**<br><br>"We will pay . . . those sums that 'you' become legally obligated to pay as 'damages' because of any 'claims' first made against 'you'. . . ."<br><br>Note: The definition of "claims" excludes "[s]anctions, fines, or penalties." |
| First-Layer Excess Policy<br><br>(Axis Surplus Insurance) | **Incorporation Provision:**<br><br>"The coverage provided by this policy . . . follows the terms, conditions, exclusions, and endorsements of the 'first underlying insurance' as shown in Item 8 of the Declarations."<br><br>Note: Item 8, Schedule A lists "General Star" as the underlying professional-liability insurance.<br><br>**Coverage Provision\*:**<br><br>An endorsement provides, "This insurance does not apply to fines, penalties, punitive damages . . . . |
| Second-Layer Excess Policy<br><br>(Appellant Colony) | **Incorporation Provision:**<br><br>"The terms and conditions of insurance of this policy are the same as those of the 'underlying insurance' in effect at the inception of this policy except as specifically set forth in this policy and any endorsements attached hereto.<br><br>Note: Declarations, Item 4, Schedule A names "General Star" for professional-liability insurance and "Axis" as "Other: Excess Liability."<br><br>**Coverage Provision:**<br><br>"We will pay those sums that the insured becomes obligated to pay as damages in excess of the applicable limits of 'underlying insurance', shown in the Declarations to which this insurance applies." |

Colony maintains that the first-layer excess policy's clear exclusion of punitive damages should control its coverage obligations, while the insureds construe the primary policy's incorporated

exclusion of "[s]anctions, fines, and penalties" to permit recovery for punitive damages under the Colony policy.

The insureds moved for partial summary judgment on the declaratory judgment claim, and Colony responded with a cross-motion for summary judgment. Denying Colony's cross-motion and granting partial summary judgment in favor of the insureds, the district court declared that the Colony policy covers punitive damages. Specifically, it found that the terms and conditions incorporated into the Colony policy appeared to conflict: though the terms incorporated from the first-layer excess policy expressly exclude punitive damages, the court surmised that an average person could read the incorporated primary-policy exclusion of "[s]anctions, fines, or penalties" to permit "punitive damages" claims. Construing this perceived conflict in favor of the insured, the district court found that the Colony policy covered punitive damages. Colony appeals.

## II. Jurisdiction

At filing, the district court lacked jurisdiction to hear the declaratory judgment action because the question of punitive-damages coverage was unripe. The underlying wrongful-death case was pending at the time, and the court in that case had yet to award punitive damages. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (prohibiting advisory opinions on "what the law would be upon a hypothetical state of facts"); *Auster Oil & Gas, Inc. v. Stream*, 891 F.2d 570, 581 (5th Cir. 1990) ("Unless and until punitive damages are awarded, [the issue of the policies' coverage of punitive damages] is not ripe for consideration . . . ."). Nevertheless, the instant case ripened prior to the district court's grant of summary judgment on the declaratory judgment claim—the decision

4

on appeal—because Colony and the insureds settled with the wrongful-death case plaintiff and stipulated to payments "attributable to punitive damages" for the purposes of determining coverage. *See Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974) ("Since ripeness is peculiarly a question of timing, it is the situation now . . . that must govern.").

The settlement does not moot the controversy, because it merely liquidated the damages amount, leaving unsettled the issue on appeal: who must pay. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 371 (1982) (concluding that a controversy remained, notwithstanding parties' settlement, because the settlement only liquidated the damages amount without settling the liability issue pending on appeal); *Nixon v. Fitzgerald*, 457 U.S. 731, 744 (1982).

Furthermore, subject-matter jurisdiction exists by virtue of the Declaratory Judgment Act and the diversity jurisdiction statute. *See* 28 U.S.C. § 2201 (allowing a federal court to declare the rights of interested parties seeking declaration in a "case of actual controversy within its jurisdiction"); *id.* § 1332; *see also* Am. Compl. ¶¶ 68–78, ECF No. 8 (pleading other claims in controversy involving breach of contract and the Tennessee Consumer Protection Act). The parties are diverse and they represent that the disputed coverage amount exceeds $75,000. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950) (requiring parties to show the court's subject-matter jurisdiction over the dispute underlying the requested declaration); *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) (evaluating whether the amount in controversy, as alleged, "more likely than not" exceeds diversity amount requirement). We therefore proceed to the merits, having appellate jurisdiction under § 1291.

III.  Declaratory Judgment Regarding Coverage

We review a grant of summary judgment de novo.  *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009).  The moving party bears the burden of proving the absence of a genuine issue of material fact and its entitlement to summary judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Colony argues for reversal on three grounds.  First, it maintains that the primary policy excludes punitive damages.  Second, it contends that the Colony policy, in any case, does not incorporate the primary policy's exclusion of "[s]anctions, fines, and penalties."  Third, it offers that, even assuming ambiguity of the primary policy regarding punitive damages, the ambiguity disappears once one reads the primary policy and the first-layer excess policy together as part of one contract: the first-layer excess policy's express exclusion of punitive damages must trump the primary policy's silence.  Because the third argument requires reversal, we bypass the parties' dispute about whether Colony forfeited the first and second arguments.

We begin by noting that nothing in the Colony insuring agreement prohibits incorporation of the primary policy's term excluding "[s]anctions, fines, or penalties," its general coverage term promising to pay for "claims," or the first-layer excess policy's term excluding "punitive damages." Therefore, the coverage provision and both exclusions apply *equally* to the Colony policy. Tennessee law requires courts to read all parts of the contract "together to give meaning to the document as a whole," in order to construe its plain meaning. *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 705 (Tenn. 2008); *see id.* at 704 ("It is the universal rule that a contract must be viewed

from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another." (quoting *Cocke Cnty. Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985)). As such, the specific and express exclusion of punitive damages in the first-layer excess policy informs our reading of the primary policy's general commitment to cover unexcluded claims. *Cocke Cnty. Bd. of Highway Comm'rs*, 690 S.W.2d at 237 ("As a rule, where there are, in a contract, both general and special provisions relating to the same thing, the special provisions control." (quoting 17 Am. Jur. 2d. Contracts § 270 (1964))).

We perceive no conflict between the first-layer excess policy's express exclusion and the primary policy's silence regarding punitive damages. Giving effect to the first-layer excess policy's express exclusion of punitive damages implements both underlying policies without conflict: such a reading excludes punitive damages, as the first-layer excess policy requires, without offending the primary policy's ambiguous silence regarding punitive damages and its general commitment to cover unexcluded claims. Therefore, following *Cocke*, Colony may still honor the primary policy's general commitment to cover unexcluded claims and its ambiguous exclusion of "[s]anctions, fines, and penalties," while applying the first-layer excess policy's specific exclusion of punitive damages.

The insureds, by contrast, propose that we first read the primary policy's exclusion of "[s]anctions, fines, and penalties" in isolation and determine its meaning separately, without consulting other provisions in the Colony policy. First, they deem the primary policy's exclusion of "[s]anctions, fines, and penalties" ambiguous. By applying a rule of construction interpreting all ambiguities in favor of the insured, they conclude that the primary policy covers punitive damages.

7

Then, finding a conflict between this interpretation of the primary policy (favorably construed to cover punitive damages) and the express punitive-damages exclusion of the first-layer excess policy, they construe this perceived conflict in the insureds' favor again, in favor of coverage.

This approach would require applying the rule of construction in favor of the insured twice: first, after reading the primary policy in isolation to prop up the view that the primary policy covers punitive damages, and second, after discerning a conflict between the first-layer excess policy and an already-bootstrapped interpretation of the primary policy. Tennessee law precludes this multi-step method of construction. *See Allmand v. Pavletic*, 292 S.W.3d 618, 631 (Tenn. 2009) ("[T]he better rule in all cases is to read the whole instrument and give effect to every part if possible, and thereby reach its true meaning, and not resort to artificial or arbitrary rules until the former rule is exhausted." (internal quotation marks and citation omitted)); *Standard Life Ins. Co. v. Hughes*, 315 S.W.2d 239, 243 (Tenn. 1958) ("[T]he rule of ambiguity and construction against the insurer does not permit a court to create an ambiguity where none exists."); *Crouch v. Shepard*, 44 Tenn. 383, 388 (1867) (holding that the rule of interpreting contract "more strongly against the party using it" is "a rule of strictness and rigor, and not to be resorted to but when other rules of exposition fail."). We derive nothing from examining how the parties to the primary policy would have interpreted that policy's coverage, in isolation. Rather, we must determine how the parties to the Colony policy would have read all of its incorporated provisions—together—as part of one policy.

Tennessee law forecloses the insureds' remaining arguments. First, the insureds present parol evidence of a primary policy quote in Colony's possession at the time of the Colony policy's

issuance, which specified that the primary policy "has no exclusion for Punitive Damages." This quote, they argue, proves Colony's view that the primary policy covered punitive damages. But Tennessee law sanctions a party's use of extrinsic evidence only to resolve ambiguities, not create them. *See Fariss v. Bry-Block Co.*, 346 S.W.2d 705, 707 (Tenn. 1961). And even if we were to accept this quote as evidence of Colony's understanding of the meaning of the *primary* policy, it fails to illuminate how reasonable parties would have construed the terms incorporated from the primary policy and the first-layer excess policy, when read together as parts of the *Colony* policy. Second, the insureds suggest that the express exclusions in the Colony policy for terrorism and certain mail-related claims would be superfluous if the express terrorism-and-mail exclusions incorporated from the first-layer excess policy could contradict the silence of the primary policy. (The first-layer excess policy, like the Colony policy, expressly excludes terrorism and mail claims, while the primary policy does not.) But "an exclusion clause cannot be used to create liability where none would otherwise exist." *Hughes*, 315 S.W.2d at 243 (quoting *Murphey v. Inter-Ocean Cas. Co.*, 186 N.E. 902, 903 (Ind. Ct. App. 1933)). We cannot interpret Colony's decision to expressly reiterate one exclusion as an implicit renunciation of all of its incorporated exclusions. The fact that Colony *could* have drafted its policy in a clearer fashion fails to move the debate here, that is, whether Colony's policy unambiguously excludes punitive-damages coverage.

To conclude, we read the primary policy with the first-layer excess policy's express exclusion, as part of the same contract. We glean the meaning of the Colony policy from the perspective of the Colony policy's contracting parties (who would have read the first-layer excess policy and the primary policy together as one whole), rather than from the perspective of the primary

policy's contracting parties (reading the primary policy without the benefit of the language in the other policies). And we apply a rule of construction favoring the insureds *only if* the two incorporated exclusions and the coverage provisions—read together—remain ambiguous. Applying these principles, we discern no ambiguity exists to trigger application of the "in favor of the insured" rule of construction. A reasonable layperson construing a contract that covers "any 'claims'" but excludes "punitive damages" would understand that the contract's scope of coverage excludes "punitive damages."[1]

## IV. Attorney's Fees

In a related appeal (Case No. 10-6402), the parties dispute whether the district court, in enforcing their agreement that the "losing party" of the declaratory judgment action pay the attorney's fees of the "prevailing party," should have waited to award attorney's fees to the insureds until after the resolution of the declaratory judgment appeal (Case No. 10-5745). Because the insureds, as losing parties, are not entitled to attorney's fees, this dispute on timing is moot. We vacate the district court's award of attorney's fees. *See Foster v. Booker*, 595 F.3d 353, 367 (6th Cir. 2010) (reversing district court's grant of summary judgment and reversing award of costs and

---

[1]Though we conclude that the Colony policy presents no ambiguity, we note as a part of our de novo review of the parties' contract that, even if the terms of the underlying insurance conflicted, the Colony policy would require the resolution of all conflicts in favor of the first-layer excess policy's terms. By incorporating all "terms and conditions" of its underlying insurance, Colony adopted a conflict-resolving term in the first-layer excess policy's insuring agreement, which provides that "[w]here any terms of this policy [the first-layer excess policy] conflict with any terms of any 'underlying insurance', the terms of this policy will apply. Therefore, even assuming that a conflict exists between the primary policy and the first-layer excess policy regarding punitive-damages coverage, the first-layer excess policy's exclusion of punitive damages would control.

attorney's fees, because plaintiffs were no longer prevailing parties). Any fees paid to date shall be reimbursed with interest at the judgment rate.

## V. Conclusion

We therefore reverse the district court's grant of summary judgment, dismiss the appeal of the motion for reconsideration as moot, vacate the order awarding attorney's fees, and remand with instructions to grant Colony's cross-motion for summary judgment.